Mock, Trustee, *v.* Bechtel et al., Appellant.

Argued October 30, 1930.

182

Before
Trexler, P. J., Keller, Linn, Gawthrop, Cunning-
ham, Baldrige and Whitmore, JJ.

John C. Sherriff, and with him Paul E. Hutchinson of Sherriff, Lindsay, Weis and Hutchinson, and Alvin L. Little, for appellants.—The surety having discharged an obligation of the contractor to the township, is subrogated to all rights of township, contractor, laborers and material men to the fund: Commonwealth v. Froelich, 56 Pa. Superior Ct. 604; Forest Oil Company's Appeal, 118 Pa. 138; Hess Estate, 69 Pa. 272; Prairie State Bank v. U. S., 164 U. S. 227.

Frank E. Colvin, and with him Simon H. Sell and John M. Reynolds, for appellee, cited: Green Co. v. Southern Surety Co., 292 Pa. 304; McCarthy to Use v. Bridgeport Boro., 299 Pa. 305; Wells to Use v. Philadelphia, 270 Pa. 42.

OPINION BY KELLER, J., February 27, 1931:

In order to arrive at a correct decision in this matter it is necessary to keep in mind the particular facts of this case which distinguish it from the authorities relied on by the appellant.

Bechtel & Walter, a partnership, entered into a contract with Monroe Township for the building of a bridge over Sidling Hill Creek for the sum of $3,387.73. The contract itself contained no clause, covenant or provision for the protection of laborers or material men furnishing work or materials in the erection of the bridge; nor was there any statutory requirement that it should do so: Greene County v. Southern Surety Co., 292 Pa. 304; Patterson v. New Eagle Boro., 294 Pa. 401. Nor did the contract contain any provision for any reserved percentage until the completion of the bridge, as in McKallip v. Altoona, 265 Pa. 192; the township was at liberty to make full payment for the work as it progressed. There was a clause providing that the contractors should not assign the work, nor any right to any moneys to be paid thereunder without the consent in writing of the board of supervisors.

The bond for half of the contract price, which the contractors were required to furnish, did contain provision for the protection of laborers and material men. It was made payable to the Commonwealth for the use of the Township of Monroe and any other corporation or person interested, and was conditioned that "the above bounden principal, contractor, shall in all respects comply with the terms of the contract and conditions of said contract, and his, their or its obligations thereunder, including the specifications therein referred to and made a part thereof......and shall well and truly, and in a manner satisfactory to the supervisors of Monroe Township, complete the work contracted for, and shall save harmless the Township of Monroe from any expense incurred through the

failure of said contractor to complete the work as specified, and for any damages growing out of the carelessness of said contractor, or his, their, or its servants, or for any liability for payment of wages due or material furnished said contractor, and shall well and truly pay for all material furnished and labor performed in and about the construction of said bridge.''

It also contained the following clause: ''The principal and surety further jointly and severally agree with the obligee herein that in case of failure on the part of either to carry out the terms and provisions of this contract and bond, that any person, firm or corporation who has furnished labor and materials, used in and about the construction of said bridge and payment for which has not been made, shall have the right to intervene and be made a party in the action instituted by the township, the obligee on this bond, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the said township, and further agree that if no suit should be brought by the township within six months from the completion of said contract and the final settlement thereon, then the person or persons supplying the contractor with labor and materials shall have the right to institute suit hereon, and that the procedure to collect on this bond shall follow the provisions of the Act of May 31, 1911, P. L. 468 and its supplements and amendments thereto, except that where the words 'Commonwealth of Pennsylvania' appear in said Acts the Township, which is the obligee herein shall be substituted.''

This provision did not make the bond a statutory one under the Act of May 31, 1911, P. L. 468 or its amendment of May 16, 1921, P. L. 650. It could not, for those acts relate only to the construction of *state* highways, and *state aid* highways, including bridges

on such highways, and for bonds given in connection with contracts for such construction; and this contract related to the construction of a township bridge, and there was no law requiring such a provision for the protection of laborers and material men on township road contracts. Nevertheless the township could, if it saw fit, insert such a provision in the contractors' bond and legally bind the contractors and their surety for its performance: Robertson v. Globe Indemnity Co., 77 Pa. Superior Ct. 422; Portland Sand & Gravel Co. v. Globe Indemnity Co., 301 Pa. 132; but the reference in the bond to the Act of May 31, 1911 and its amendment of May 16, 1921, did not make the bond a statutory one, nor have any effect other than to adopt, by reference to said statutes, the method therein prescribed of enforcing the bond for the benefit of laborers and material men. It is important to keep this in mind.

The contractors made no default in the completion of the contract. They finished the bridge in accordance with the plans and specifications and turned it over to the supervisors by whom it was duly accepted. No money was paid them during the course of construction and to meet expenses in connection therewith, the contractors borrowed money from two banks, Hartley Banking Co., $2,800 and Farmers & Merchants National Bank of Williamsburg, $400, and gave them written assignments of those amounts out of the funds coming to them from the township, which were presented to the supervisors and consented to by them, although not in writing; the supervisors could waive this provision, inserted in the contract for their benefit, if they saw fit. The contractors, however, did not pay all their material men, were adjudicated bankrupts, and Charles R. Mock was appointed their trustee in bankruptcy. The Fidelity and Casualty Company, surety on the bond, thereafter paid claims of material men amounting to $1,237.22; the cost of

constructing the bridge apparently being greater than the contract price.

Suits having been brought against the township by Hartley Banking Co. and Charles R. Mock, trustee in bankruptcy respectively, on petition of the township supervisors the entire contract price was paid into court and all persons having claims upon the fund made parties to an interpleader. The court below awarded Hartley Banking Co. and Farmers & Merchants National Bank of Williamsburg the amounts of their assignments prior to the claim of the surety on the bond. The latter has appealed.

Had the contractors defaulted in the construction of the bridge, and the surety, having been called on by the supervisors, had completed the work, there is no doubt that it would have stood in the place of the contractors and been entitled, as far as was necessary, to any money coming to them from the township, with priority over any assignments given by the contractors: Wells v. Phila., 270 Pa. 42, 46, 47; Phila. v. Nichols Co., 214 Pa. 265, 273. But there was no default in the erection or completion of the bridge. The appellant's rights do not arise from any breach of the contract of construction, but from a breach of the provision in the bond inserted for the protection of material men, over and beyond the terms of the contract itself; and these rights must be construed and enforced in the manner provided for in the bond and in the statute which it adopts by reference as a method of procedure. This method of procedure is wholly different from that prescribed in the construction of federal works, as interpreted in the federal decisions relied on by appellant, and the authorities relied on from other states.

The appellant having paid the claims of material men following a breach of the *bond* by the contractors is subrogated to their rights against the contractors. What are those rights? We leave out of present con-

sideration the rights which accrue to them in case of a breach of the construction contract by the contractors and a suit by the township on the bond because of such default, for there was none here—the contractors completed the bridge to the satisfaction of the township supervisors and the township has no right of action on the bond. In that event, the bond provides that after six months after the completion of the contract and *the final settlement thereon*, the material men, etc., shall have the right to institute suit on the bond, with provisions for pro rata distribution among intervening claimants in case of deficiency, as provided by the Act of 1921, supra, p. 655. But it will be noted that no material man or laborer has any right of action under the bond—and that is his only basis for cause of action in this proceeding,—until after the township has made final settlement with the contractors. In other words, the bond contemplates and provides that the township shall pay the contractors the full amount due them on completion of the contract, and it is only after six months have then elapsed and the contractors have failed to use the funds paid them by the township to the payment of the claims of material men and laborers, that the latter secure an independent right of action on the bond. Had the contractors made no assignments and not been adjudicated bankrupts, the contract price would have been payable to them and no notice or action of the material men or the surety under the bond could have affected such right: McCarthy v. Bridgeport, 299 Pa. 305; Phila. v. McLinden, 205 Pa. 172, 175; Lesley v. Kite, 192 Pa. 268. The material men had no rights to enforce under the bond until after the final settlement was made; and the surety's rights as respects this feature of the bond, which must be distinguished from its rights as respects the completion of the contract itself, rise no higher. On this feature of the bond, which creates a liability for breaches of

the contractors after final settlement with the township, the surety company must be presumed to have demanded and received adequate indemnity apart from the contract price; in the absence of an assignment to it of the payments due under the contract for any breach of the bond, as in Cox v. N. E. Equitable Ins. Co., 247 Fed. 955.

So likewise, had the contractors been adjudicated bankrupts without making any prior valid assignments, the trustee in bankruptcy would have stood in the place of the contractors and been entitled to the fund in preference to the material men or laborers claiming under the bond, or the appellant standing in their shoes. It is because the assignments of the fund were made more than four months prior to the adjudication in bankruptcy that the assignees take the fund in preference to the trustee in bankruptcy.

We shall not discuss the many cases cited by appellant in support of its position. We have examined them all, but they are not applicable here because there was in them either (1) a default on the part of the contractors in the construction of the works which subrogated the surety to their rights as against the owner of the public works; or (2) the contract for the construction of the works in terms provided for the payment of laborers and material men and for retention of part of the contract price for their benefit or that of the surety; or (3) the bond under which the surety claimed the right of subrogation with priority over assignments etc. was vitally different in its terms from the bond given in this connection.

The assignments of error are overruled and the judgment is affirmed at the costs of the appellant.