Sundheim *v.* Philadelphia School District
(et al., Aplnt.).

Continental Casualty Co.'s Appeal.

Argued January 6, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*H. Rook Goshorn*, with him *Frank R. Ambler* and *Harry S. Ambler, Jr.*, for appellant.—Failure to pay laborers and materialmen is such breach of the contract as will entitle the surety to assert its rights of subrogation to unpaid balances due on the contract: Henningsen v. U. S. Fid. & G. Co., 208 U. S. 404; Lancaster County Bank's App., 304 Pa. 437.

The indemnity agreement operated as an assignment of the retained percentages and created an "equitable lien" upon them.

The surety is subrogated under the indemnity agreement: Lancaster County Bank's App., 304 Pa. 439; McKallip v. Altoona, 265 Pa. 192.

Apart from the agreement, the surety, having assumed the obligation on default of the principal, under the "equitable doctrine of subrogation" succeeds to the

principal's rights in the contract and to the rights of the owner in the securities held by him: Wells v. Phila., 270 Pa. 42; Com. v. Froelich, 56 Pa. Superior Ct. 604; Markee v. Phila., 270 Pa. 337.

*George E. Beechwood,* of *Conlen, LaBrum & Beechwood,* with him *Mark E. Lefever* and *Samuel D. Goodis,* for appellee.—The surety has no right of subrogation to the retained percentages.

The contractor did not default on its contracts with the school district.

Failure to pay labor and materialmen did not constitute a default: Eddystone Boro. School Dist. v. Lewis, 98 Pa. Superior Ct. 227; Reading S. Dist. v. Casualty Co., 98 Pa. Superior Ct. 221; Greene County v. Surety Co., 292 Pa. 304: Lesly v. Kite, 192 Pa. 268; Phila. v. McLinden, 205 Pa. 172; Davis v. Surety Co., 302 Pa. 21; McCarthy v. Boro., 299 Pa. 305.

The general contract of indemnity does not purport to assign the retained percentages: Weightman v. Trust Co., 208 Pa. 449; Fidelity & Deposit Co. v. Call, 81 Pa. Superior Ct. 132; Equitable Trust Co. v. Surety Co., 214 Pa. 159.

OPINION BY MR. JUSTICE KEPHART, March 20, 1933:

The question involved in this appeal concerns the right of a surety, who has paid the claims of labor and materialmen, to funds in the hands of the owner as against the claims of other creditors.

In 1929 the Weiss Construction Company, hereinafter called contractor, entered into three separate contracts dated January 7th with the School District of Philadelphia, hereinafter called owner, for the construction of three school buildings. The contracts authorized the owner to notify the contractor to discontinue work under the contract in case he neglected, delayed, or defaulted in the performance of it, or to declare the contract null and void, in which case the security bond,

retained percentages, and material on the premises should become the property of the owner. Eighty-five per cent of the contract price was to be paid as the work progressed, 12% was to be held until the buildings were accepted, and .3% retained by the owner for twelve months, subject to the completion of the buildings, as security against any loss arising from defective workmanship, materials and settling.

Three bonds, hereinafter termed construction bonds, were executed and delivered, each bearing the same date as the contract. These bonds were to save, protect, and indemnify the owner from and against all loss, damage, and expense by reason of failure to comply with the contract and specifications.

In compliance with the Act of May 10, 1917, P. L. 158, as amended by the Act of May 6, 1925, P. L. 546, the surety and contractor executed three additional bonds similarly dated to secure the payment of labor and materialmen.

On January 17, 1930, one of the school buildings was accepted by the owner, and on February 11th of the same year, the other buildings were accepted, with the exception of the work of terracing, sodding, and seeding the grounds, and subject to the provision of the contract requiring maintenance of the buildings for one year after acceptance. The owner paid to the contractor all the money called for by the contract with the exception of the retained 3%, amounting to $36,253.52, and the sum of $10,000. The latter sum was held to pay for the work of terracing, etc., as above stated. The contractor, having failed to go ahead with this work, was notified on February 24th that unless he proceeded to finish the work, he would be ordered to withdraw from the premises. On March 3d, the contractor, having done nothing, was ordered to withdraw, and the owner stated it would finish the work and deduct the cost from the money in its hands. A copy of this letter was sent to the surety.

The surety, after the owner started to do the unfinished work, asked that it be permitted to complete it. The sodding, etc., was finished by the surety at a cost of $1,975. The $10,000, retained as above stated by the owner, was paid to the surety less $415 retained to reimburse owner for expenditures for repairs. The surety used $1,975 of that sum to repay it for sodding, etc., and applied the balance to other items it was compelled to assume under its bonds because the contractor had failed to pay them. The cost to surety for maintenance of the building for one year after the date of acceptance was $6,275. It also paid some $72,000 that the contractor failed to pay for labor and material on the buildings that had been accepted.

A creditor, who had furnished coal to the contractor during construction, having obtained a judgment, secured the appointment of a receiver for the contractor who had become insolvent. The receiver demanded from the owner the $36,000 retained percentage which it was holding, and which was admitted to be then due. The surety made claim to this sum and a suit was instituted by the receiver against the owner, in which the surety interpleaded. The money was paid into court, and the case proceeded between the surety and the receiver. The court below entered judgment for the receiver.

The surety claims the fund because the failure of the contractor to complete the unfinished work or to pay labor and materialmen was such a default in the general contract that under the "equitable doctrine of subrogation," it succeeded to the contractor's rights in the contract and to the owner's right in any securities held by it, as well as to the owner's right against the contractor; and, second, because the contract of suretyship or the general indemnity contract obtained by surety operated as an assignment of the retained percentages or created an equitable lien on that fund in the hands of the owner.

To determine the questions involved, it is necessary to ascertain the status of the general contract for the construction of the buildings after they were accepted in January and February, 1930. One building was accepted absolutely, and the other two were accepted but for the work of terracing, sodding, and seeding, and subject to the requirement of maintenance for one year from the date of acceptance, to pay for which $10,000 was retained by the owner. By these acts the owner indicated that he considered the buildings entirely completed. As to the work of terracing, sodding, etc., while the provisions of the general contract may apply as to manner and method of performance, once the buildings were accepted, such work may be regarded as the subject of an agreement having the status of a new contract. The surety cannot regard it otherwise as it consented to the arrangement between contractor and owner.

Under these circumstances, there was no default in the contract to complete the buildings; they had been accepted. Nor could there be as to any part of the work that had been performed in connection with the buildings prior to their acceptance. If there was a later default, it was in connection with the unfinished terracing, sodding, etc., and the owner had taken a specific sum to pay for the cost of this work. After paying for it there remained a balance of $1,300 over its cost, such cost including the maintenance item of $6,275.

May the surety now take the $36,000 the percentage retained by the owner as security against any loss from defective workmanship, etc., because of the contractor's failure to complete the sodding, terracing, etc.? While the failure of the contractor to complete these items and maintain the buildings for a year after they were accepted may have been a default as to such work, it was not one as to the general contract for the completion of the buildings. Such default, even if the surety had been required to complete the unfinished work of sodding, etc., under the terms of the general contract between

the owner and contractor, or was likewise required to complete under the terms of its bond, would not entitle the surety to the retained percentage to reimburse itself for the sums paid for labor and material on the general contract. The obvious reason is that as to such unfinished work the surety was fully paid and did not lose a dollar. The surety, in completing without loss the unfinished work, stands exactly in the same position as to the retained percentages as if the contractor had completed his contract and had failed to pay labor and materialmen, whom the surety had thereafter paid. The surety is not entitled, under the doctrine of subrogation, to moneys then in the owner's hands. This principle is further discussed in answering the next question.

The surety earnestly contends that the failure of the contractor to pay the labor and materialmen which it is required to pay is such a default in the contracts for construction that it is entitled to the fund. Ordinarily, and at common law, the owner is under no liability in a contractual sense, nor is he under any duty to pay, nor may his property be subjected to payment of labor and materialmen of the contractor. This common law status as to any owner's property for which labor and material is supplied has been changed by statute. Such property is made subject to a statutory liability to labor and materialmen of his contractor, who are given the right, subject to certain qualifications, to file a mechanic's lien for their claims. Property of municipalities, school districts and the like are exempt from such liability. A mechanic's lien or attachment in the nature thereof cannot be filed against property belonging to these agencies of government. The legislature has, however, seen fit to protect labor and materialmen engaged by a contractor in the erection of public buildings or doing public work, by requiring the contractor to give a bond to protect them. See Acts of 1917 and 1925 above referred to.

In construing these acts appellant applies the decisions of the federal courts. Under federal statutes a

single bond is required which must provide for the completion of the contract and the payment of labor and materialmen: 40 U. S. C. A., section 270, 36 Stat. 1167. It has been held by federal courts that there is a direct contractual obligation to the government as a party to the contract, binding on the contractor and surety, to pay labor and materialmen. Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States government. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It is therefore entitled to subrogation to the rights of the United States in the fund. Subrogation does not arise through the contractor but from the government's rights: Prairie State Bank v. U. S., 164 U. S. 227; Henningsen v. U. S. Fid. & Guar. Co. of Baltimore, 208 U. S. 404; In re Scofield, 215 Fed. 45. In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are in harmony with those decisions as illustrated by Lancaster County National Bank's App., 304 Pa. 437.

There is no state statute requiring school districts to protect themselves against loss for a contractor's failure to complete, but such protection is generally procured. The school district must, however, secure an additional bond to protect labor and materialmen. When a bond is thus procured, no new or additional duty is imposed on such districts to see that labor and materialmen are in fact paid. The latter because of such bonds acquire no lien against the building, or right in any funds in the owner's hands: Philadelphia, to use, v. McLinden, 205 Pa. 172; McCarthy, to use, v. Bridgeport Boro., 299 Pa. 305; Davis, Trustee, v. Southern Surety Co., 302 Pa. 21.

When the two bonds were given to the school district, one for protection in construction, the other for the benefit of labor and materialmen, two distinct and sep-

arate obligations were then in effect: School District of the Borough of Eddystone v. Lewis, 98 Pa. Superior Ct. 227. See Concrete Products Co. v. U. S. Fid. & Guar. Co., 310 Pa. 159. But, as stated, neither bond changed the common law status of the owner as it related to the contractor's employees or materialmen. This principle has been recognized in other similar situations.

There was no obligation in the construction bonds or the construction contracts to pay labor and material-men. Therefore, the failure to pay labor and material-men standing alone did not breach either of these instruments. Nor was it intended by the Acts of 1917 and 1925 that their provisions should become a part of such contracts so as to make such failure a default un-der these instruments. The acts simply required an "additional bond" for the protection of labor and ma-terialmen and it was under that obligation the surety was required to pay. The contractor's obligation to pay labor and materialmen came through the agreements be-tween the contractor and such claimants. Therefore, when the surety paid these claims, without other facts, (Lancaster County National Bank's Appeal, supra,) it can predicate no right through the construction con-tract with the owner, or the bond given for that con-struction, or the statutes referred to, to any part of the funds in the owner's hands due under the construction contract.

In Philadelphia, to use, v. McLinden, supra, a surety on two bonds, as here, gave the city notice not to pay the contractor the final payment. Despite this notice the city paid. The surety then refused to pay the labor and materialmen under its bond, and the latter sued the surety. The surety was held liable on the ground that the city owed no duty to labor and materialmen, and therefore had no obligation to withhold payment from the contractor. The court said: "The notice not to pay the contractor would have exonerated the surety if the payment was one which the city ought to have withheld,

but it was not. The city was under no obligation to pay the claimants, nor to see that they were paid. They had no claim upon the fund in its possession which could be enforced, and the city could not retain the money in order that the creditors of the contractor or his surety could reach it by any process." See Davis, Trustee, v. Southern Surety Co., supra, holding that the Acts of 1917 and 1925, providing for a bond to protect labor and materialmen, merely make obligatory on certain districts what was perhaps optional prior thereto.

In McCarthy, to use, v. Bridgeport Boro., supra, a contractor in a construction contract and bond promised to pay labor and materialmen. No statute required these provisions. The assignee of the contractor sued the borough and it defended on the ground that labor and materialmen had not been paid. It was held that the borough had no duty to see to the payment of labor and materialmen, and as they had no right to funds in the borough's hands, the assignee was entitled to it.

These cases clearly show a municipality has no duty to see that labor and materialmen are paid and the labor and materialmen themselves have no preference or claim to the retained percentages. Therefore, the surety whose rights rise no higher than those of labor or materialmen, can have no right of subrogation to money in the owner's hands as retained percentages.

The equitable doctrine of subrogation does not raise an ordinary claim or right to a preferential one, nor does it deny to persons, holding claims equal in all fairness to the one under which subrogation attaches, the right to participate equally in a debtor's assets with those asserting subrogation rights. The doctrine of subrogation is not to be used to create favorites among a class of creditors who at law are equal.

Appellant, to enforce subrogation, must point to some equitable right through the persons in whose shoes it stands. We have stated that the buildings were accepted and the contracts were completed. Assuming that the

construction obligation was a completion bond and the surety had been called in to complete (which it had not been in this case), if the surety completed the building it would have been entitled to be reimbursed for its outlay in completing the contract whatever that outlay may have been: Wells, to use, v. Philadelphia, 270 Pa. 42; Mock v. Bechtel, 101 Pa. Superior Ct. 181. In that respect it would also stand in the position of the owner (Wells, to use, v. Phila., supra), and might subject any sums or securities in the owner's hand to accomplish that purpose. To this extent subrogation is perfect, but like the owner the surety could not hold the balance due on the contract after the work was completed. Such balance belongs to the contractor or his representative, and no notice or action of the materialmen or surety could affect that right: McCarthy, to use, v. Bridgeport Boro., supra; Philadelphia, to use, v. McLinden, supra; Lesley v. Kite, 192 Pa. 268.

The mere fact that it is a surety does not clothe it with any peculiar rights or raise it to a position above other creditors in its class. When surety completed the excepted items within the $10,000, the school district had no further interest in the retained percentages, nor had it any right to hold this money. Therefore, the surety, in doing that work for which it was paid, gained no right of subrogation through the school district.

The only subrogated rights that surety could claim were those of the labor and materialmen it had paid, but they had no lien on the buildings, no right to the funds in the hands of the owner district, nor any contractual obligation on the part of the owner to see that they were paid. They, as labor and materialmen, had no right of subrogation against the owner. They had a claim against the contractor and it was to that claim the surety was subrogated, but that right did not extend to the contractor's money due and in the owner's hands, unless it was seized by legal process. To hold otherwise would be to give suretyship an exalted position in the

ranks of creditors. The subrogation rights extend to the rights of the party whose claim the surety is compelled to pay. "When a party is required to pay a debt for which he has made himself legally liable, as surety, for which another is liable as principal, and which that other in good conscience ought to pay, such payment operates to invest the party paying with the creditor's rights and remedies against the principal debtor. This is the mode which equity adopts to compel the ultimate payment by him who in good conscience ought to pay the debt, to the relief of him whom none but the creditor could ask to pay. The general rule is well settled that if a surety has paid a debt, he is entitled to all the securities the creditor had against the principal debtor: Pott v. Nathans, 1 W. & S. 155; Burns v. Huntingdon Bank, 1 Penrose & Watts 395; Armstrong's App., 5 W. & S. 352; Hill v. Denniston, 197 Pa. 271": Com. v. Froelich, 56 Pa. Superior Ct. 604, at page 609.

Lancaster County National Bank's Appeal, supra, it seems, is relied on by appellant. In that case contracts were entered into for the construction of a state highway under the Act of May 16, 1921, P. L. 650, amending section 13 of the Act of May 31, 1911, P. L. 468. The effective act is very similar in form to the federal statutes. One bond only was executed which secured the prosecution and completion of the work and prompt payment of labor and materialmen. The contract itself so provided. There was a default on the contract and the surety completed and was held to be entitled to the retained percentages as against a creditor who had loaned money to the contractor for the job. Mr. Justice SIMPSON, speaking for the court, said that "the contractor could not get the semi-final estimate......until and unless all 'claims for labor and materials have been satisfactorily settled,'......It knew, for it was bound to know, that the statute, the contract and the bond made the rights of the materialmen and workmen paramount to those of the contractor, and that upon these

provisions the materialmen, workmen and surety had the right to rely."

The case of Mock v. Bechtel, supra, was distinguished from that case because therein the "contract......contained no clause, covenant or provisions for the protection of labor and materialmen,......nor was there any statutory requirement that it should do so."

In Mock v. Bechtel, supra, a contract was entered into between the township and contractor for a bridge. The contract did not, but the bond to secure completion of the contract did provide for the payment of labor and materialmen, whom surety paid. The court held that as the contractors made no default in the completion of the contract and the bridge was finished and accepted, the surety had no right to the final payment. "The appellant's rights do not arise from any breach of the contract of construction, but from a breach of the provision in the bond inserted for the protection of materialmen, over and beyond the terms of the contract itself; and these rights must be construed and enforced in the manner *provided for in the bond and in the statute* which it adopts by reference as a method of procedure."

In Wells, to use, v. Philadelphia, supra, so much of that decision applicable to the facts here may be stated as follows: when the default was declared and surety called on to complete, "......the surety,......stood ......in direct relation to defendant [city] as a party contracting to complete the work......the surety succeeded to all the rights of the contractor under the contract......As to any money retained, the surety stood ......in the position as the owner of the property to which the contract related. From this fund and the unpaid contract price, it is entitled to sufficient to save itself from loss." The loss mentioned was the loss in completing the contract; it was not intended to comprise other losses, and the surety did complete at a loss.

The appellant claims that there is an equitable assignment of this fund through the general contract of

indemnity. This was the contract against surety's possible loss which it demanded from the construction company before it executed its surety engagement, and was signed by several individuals along with the construction company. A careful survey of the document shows that it is not only vague and indefinite, but it does not identify the thing assigned, or furnish anything by which certainty of identification can be obtained. The default mentioned in the general indemnity contract is a default in any part of the provisions of any contract covered by the suretyship. The contracts are not identified or mentioned. "Any contract" referred to the construction contract and it did not provide for the payment of labor and materialmen. A bond did so provide, but it was not "The contract covered by the suretyship."

We have no doubt that an express executory contract in writing whereby the contracting parties sufficiently indicate an intention to make some *particular property or fund therein described* the security for a debt or other obligation, creates an equitable lien on the property so indicated (Hurley v. Ashbridge, 55 Pa. Superior Ct. 523), but there must be such an identification of the fund and such a transfer of it as would clearly indicate that intention. There is nothing in the contract which measures to this requirement.

The terms of the general contract approaching nearest an assignment are in the fourth part of the paragraph which refers to deferred payments: "all moneys and securities that may be due and payable at the time of such default [assuming there was a default on the general contract]......shall be credited for any claims that may be made upon the said surety by reason of its suretyship as aforesaid." Manifestly these are not words of assignment. The credit that would be given would be given by the person in whose hands the funds were lodged and who was no party to the contract. The words did not constitute an assignment of the retained percentages, nor does the appellant attempt to explain

how they can be so construed. In John W. Barwell, Inc., v. Vail, 108 N. J. Eq. 117, a similar paragraph was held not to be an equitable assignment.

Judgment affirmed.