American Surety Company of New York, Appellant,
v. Kunkle, Admr.

526

Argued March 15, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*J. E. Vandersloot,* and with him *David P. Kline-dinst,* for appellant.

*McClean Stock,* and with him *Carl R. May,* of *Neff & May,* for appellees.

OPINION BY STADTFELD, J., April 15, 1935:

Decedent, Christian F. Troutwine, in his lifetime entered into two written contracts with the School District of the City of York for the installation of toilet fixtures at the Franklin School Building and at the Hartley School Building, respectively. For each contract he furnished two bonds—one a construction bond to guarantee the performance of the contract, the other an additional bond to guarantee the payment of material furnished and labor supplied in the performance of the work. Appellant, American Surety Company became surety upon all four bonds, to wit, the two construction bonds and the two additional bonds.

At the time of the death of decedent, decedent was engaged in the performance of both contracts. After his death the contracts were completed by George W. Kunkle, his administrator, on his own motion.

In order to secure the American Surety Company as surety on the four several bonds, the decedent executed applications for bonds containing, inter alia, indemnity agreements, as follows: "VIII ...... And the indemnitor further agrees in the event of any breach or default on his part in any of the provisions of the contract covered by said suretyship that the surety, as surety, shall be subrogated to all the rights and properties of the indemnitor in such contract, including deferred and reserve payments,

current and earned estimates and final payments, and any and all moneys and securities that may be due and payable at the time of such default on this or any other contract of the indemnitor or on any one or more of them on which the surety is or may become surety.''

Payments on account of these two contracts were made by the School District of the City of York after the death of decedent as follows: (1) by check, in the sum of $3,249.92, dated August 11, 1932, which was written on the day before the decedent died and was received after his death and deposited by the Administrator in the account of the estate, and (2) by payment of $1,194.89 which was paid under an agreement between the American Surety Company, the Administrator and the School District of the City of York. American Surety Company subsequently paid $2,838.98 to certain materialmen in payment of materials furnished by them in the lifetime of the decedent and used in the performance of these two contracts.

The balance for distribution amounts to $2,395.73, which sum is less than the claim of the American Surety Company. Appellant claims payment of the entire balance for distribution in priority to the payment of the claims of other creditors, on the theory that the balance for distribution represents the money received by the administrator from the School District on account of the two contracts, and that this money had been assigned under Section VIII supra of the application for bond by Troutwine to the Surety Company.

Appellant was allowed a dividend by the auditor on the amounts of money paid by it on account of materials furnished on these contracts, which dividend was of equal rate with that awarded to other unsecured creditors of decedent.

Exceptions to the report and schedule of distribu-

tion of the auditor were overruled by the court and a decree entered confirming the same. From that decree this appeal was taken.

It is conceded that the administrator completed the contracts in question. Hence there was no breach or default which was made a condition precedent in the indemnity agreement for the subrogation of the surety to rights in the unpaid balance due from the School District to Troutwine.

The death of Troutwine worked no breach.

"The general rule is that, to the extent of the assets that come to their hands, the personal representatives of a decedent are responsible on all his contracts," Stumpf's Appeal, 116 Pa. 33, 38, 8 A. 866. A contract for personal services may be discharged by death but where the contract may be performed by the personal representative, such result does not follow: Young v. Gongaware, 275 Pa. 285, 287, 119 A. 271. As stated by Mr. Justice KEPHART in said case: "Where the contract may be performed by the personal representatives, or where it embodies a property right, the performance of such duty and the succession of such right to the personal representatives is generally held to be the rule of law; death does not terminate such contracts."

The contract between Troutwine and the School District contains no provision that Troutwine should pay the materialmen, nor was there any assignment to appellant of the moneys which might become due from the School District. It merely provided for the subrogation in the event of a breach: "Indemnitor further agrees *in the event of any breach or default* on his part in any of the provisions of the contract covered by said suretyship that the said surety, as surety, shall be subrogated to all the rights and properties of the Indemnitor in such contract etc. ......" (Italics supplied).

Where there is no breach in the construction contract there is no right in the surety to claim by right of assignment or by right of subrogation the unpaid money due by the School District to the contractor. Mock v. Bechtel, 101 Pa. Superior Ct. 181, 186.

The non-payment by the contractor of materials used in the construction contract was no breach of the contract with the School District.

The additional bond to protect labor and materialmen was given under the provisions of Section 617, of the Act of May 18, 1911, P. L. 309, as amended by Section 16, of the Act of May 29, 1931, P. L. 243, 24 PS Sec. 763 (Supplement). This section also gives the person, who furnishes material or performs labor in the prosecution of the construction work, the right to bring suit in the name of the school district but particularly exempts the school district from liability and the payment of any costs or expenses of such suit. This provision does not impose the obligation upon the school district to pay the materialmen and those furnishing labor.

When a bond is thus procured, no new or additional duty is imposed on such district to see that labor and materialmen are in fact paid. When two bonds are given to the school district, one for protection in construction, the other for benefit of labor and materialmen, two distinct and separate obligations are then in effect. Neither bond changed the common law status of the owner as it related to the contractor's employees or materialmen.

There was no obligation in the construction bonds or the construction contracts to pay labor and materialmen. Therefore, the failure to pay labor and materialmen standing alone did not breach either of these instruments.

The contract having been completely performed and the School District having accepted the performance

thereof, there is no liability to anyone for anything under the two construction contracts.

The failure of Mr. Troutwine, or of anyone on his behalf, to pay for all of the labor and material which was used in the performance of the contracts, created a liability under the "additional bond" given by Mr. Troutwine covering each of the construction contracts, and on which appellant company was surety. Appellant was therefore called upon by certain materialmen to pay their claims, and upon their payment took from each of them an assignment of its claim. By virtue of this assignment the Surety Company is therefore entitled to whatever rights the assignors had against the Troutwine Estate.

As stated by Mr. Justice KEPHART, in Sundheim v. Philadelphia School District, 311 Pa. 90, on p. 100, 166 A. 365, "The only subrogated rights that surety could claim were those of the labor and materialmen it had paid, but they had no lien on the buildings, no right to the funds in the hands of the owner district, nor any contractual obligation on the part of the owner to see that they were paid. They, as labor and materialmen, had no right of subrogation against the owner. They had a claim against the contractor and it was to that claim the surety was subrogated, but that right did not extend to the contractor's money due and in the owner's hands, unless it was seized by legal process. To hold otherwise would be to give suretyship an exalted position in the ranks of creditors."

Appellant, however, contends that inasmuch as the contractor executed one joint indemnity agreement with the surety covering his application for surety on his construction bond as well as his application for surety on the additional bond to protect materialmen and labor, that this case is different from the Sundheim case. The test is not what was the indemnity

agreement between the surety and the contractor, but what was the contract between the contractor and the school district. For to work out a right of priority in favor of the surety, the surety must secure subrogation through the school district, either by aid of some statute imposing obligations upon the school district, or upon express agreement contained in the construction contract to which the school district is a party. Neither of these is present in this case.

The fact that the surety company paid the claims of the materialmen subrogates the surety company to the rights of materialmen against Troutwine, but the rights that the surety company acquired by subrogation arise no higher than the right of the materialmen: Sundheim v. Philadelphia School District, supra.

The assignments of error are overruled and decree affirmed, at costs of appellant.