DuBois, Trustee, *v.* United States Fidelity and Guaranty Co., Appellant.

Argued January 6, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Frederick H. Spotts,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.

*Joseph L. Ehrenreich,* for appellee.

OPINION BY MR. JUSTICE DREW, January 31, 1941:

This is an action in assumpsit instituted by Theodore A. DuBois, Trustee in Bankruptcy of the Estate of Fiorentino Feraco, Bankrupt, against the United States Fidelity and Guaranty Company, surety upon Feraco's bonds, to recover the sum of $10,184.37, with interest.

From the admitted facts and from the findings of fact by the learned trial judge, confirmed by the court en banc, it appears that on August 24, 1932, Feraco entered into a written contract with the Commonwealth of Pennsylvania and the City of Scranton for the construction of a certain highway, known as Section 2 of State Highway Route No. 9. The appellant (hereinafter called defendant) was surety for Feraco, as principal, upon bonds given to the Commonwealth of Pennsylvania and to the City of Scranton, to guarantee the completion of the contract and the payment of labor and materialmen.

Feraco entered into the performance of the contract and proceeded with the work until the spring of 1933. At that time, because of the closing of his bank during the banking holiday declared by the President of the United States and its failure to reopen, he was unable to procure funds necessary for the continuance of the construction. The work then completed totaled $58,396.32 in value, and Feraco had received the total sum of $45,718.45. At that time he had failed to pay certain

claims for labor and materials, which were paid by the defendant. Feraco, however, was not declared in default. The work was delayed for a period of three weeks.

After conferring with representatives of the Department of Highways, and with full knowledge of the Commonwealth and the City, Feraco, on May 10, 1933, executed a written contract with Frank Snead Company, Inc., a construction company, which undertook to complete the contract for a fee of $3,500 to be paid out of the proceeds. Feraco gave to W. Frank Snead, president of the company, a power of attorney to receive all checks and funds payable under the contract, and agreed that the monies should be used: (1) to pay the fee mentioned; (2) to pay bills incurred by the Snead Company for labor and materials; (3) to reimburse defendant for the payment of claims against Feraco; (4) to pay the balance, if any, to Feraco. The highway was completed and accepted on July 18, 1933.

During June and July, 1933, defendant paid the outstanding claims against Feraco for labor and materials and, on August 16, 1933, entered judgment against him for their total amount. From June to August payments upon the contract totalling $48,485.86 were made by checks drawn to the order of "F. Feraco, c/o Frank Snead & Co." These were endorsed by Snead under his power of attorney and applied in accordance with the agreement of May 10, 1933. At the time of the completion of the work, there remained unpaid upon the contract $13,492.92. On August 22, 1933, Feraco was adjudged a voluntary bankrupt and plaintiff was duly elected and qualified as trustee of the estate. Thereafter, on October 6 and 10, 1933, defendant procured the payment to it of $10,182.37 of the amount due upon the contract. It is to recover this sum that plaintiff, the trustee in bankruptcy, brought this action, and from the judgment in his favor, the surety company appealed.

Defendant's first contention, that an action of assumpsit to recover these funds will not lie against it,

even if they should have been paid to plaintiff, cannot be sustained. This argument is based upon a false assumption that no promise to pay can be implied because defendant received the money under a claim of right in itself. *Caskie v. Phila. Rapid Transit Co.,* 334 Pa. 33, is cited in support of the contention. In that case, however, the defendant who had received funds claimed by the plaintiff, based its claim to them, not upon the plaintiff's contract with the debtor, but upon an independent contract between the debtor and the defendant. At p. 38 it is stated: "If there was a contract between plaintiff and the Buffalo Company [for services rendered], it was binding upon the latter, and likewise if there was a contract between the latter and P. R. T. for plaintiff's services, it would be no interference with the first contract. . . . P. R. T.'s insistence on its rights, under the arrangement between the two companies could not harm plaintiff or raise a defense for the Buffalo Company in a suit by the plaintiff against the Buffalo Company. What P. R. T. did was to make a claim against the Buffalo Company for a proportionate share of the salary it [P. R. T.] paid plaintiff while he was away from Philadelphia." In the present case there was but one contract with the Commonwealth and City, that of Feraco. It was upon this contract, and not another independent agreement with the Commonwealth and the City, that defendant claimed these funds. In *Caskie v. Phila. Rapid Transit Co.,* 321 Pa. 157, we held that money paid by a debtor to one other than his creditor by mistake, can be recovered from the payee by the creditor in an action of assumpsit, citing numerous cases and the Restatement of Restitution, section 126. Therefore, if the funds obtained by defendant were rightfully payable to plaintiff, this suit can be maintained.

Defendant has advanced several theories in support of its claim to keep this money. It contends that Feraco defaulted upon his contract, and that defendant having paid claims for labor and materials in accordance with

its obligation upon the additional bonds, has a right by subrogation to the deferred payments superior to those of the trustee in bankruptcy. It alleges that Feraco was in default when he failed to pay for labor and materials, ceased work upon the contract, and declared himself financially unable to continue. The answer to this argument is that Feraco was never in default. It is conceded that the declaration of default was entirely within the discretion of the Secretary of Highways, and that it was never made. The contract was never turned over to defendant for completion, which would have been done in the event of a default by the contractor. In fact, defendant declined to finance further construction. Feraco completed the work by means of his agreement with the Snead Company, and it was accepted. The delay resulting from his financial troubles was waived. His failure to pay for materials and labor was not a breach of his construction contract. In short, the Commonwealth and the City retained no rights against Feraco to which defendant could have been subrogated. The trial judge has found as a fact that the construction contract was not in default, and his finding, supported by the evidence and affirmed by the court en banc, is binding upon us: *Meitner v. Scarborough*, 321 Pa. 212.

It is true that payment for labor and materials by defendant gave rise to a right of indemnity against Feraco, which was the basis of the judgment which defendant caused to be entered. But the sole question here is whether defendant's right *to the funds involved* is superior to that of plaintiff, a trustee representing all of Feraco's creditors. Undoubtedly defendant is a creditor of the bankrupt, but is it entitled to a preference in these funds.

The contract between Feraco and the Commonwealth and the City conferred no rights upon the materialmen to obtain payment of their bills, nor to file liens upon the property. Their claims were against the contractor

upon their individual contracts with him, and against his surety upon the bond. The construction contract contained no provision entitling the Commonwealth or the City to withhold funds owing to Feraco for the payment of such claims. Therefore, defendant, by paying the claims of the materialmen, was not subrogated to any right of the Commonwealth or the City, nor of Feraco upon the contract, *but to the rights of the materialmen against Feraco.* In this respect the present case differs from *Prairie State Bank v. United States,* 164 U. S. 227; *Henningsen v. United States F. & G. Co.,* 208 U. S. 404; *United States F. & G. Co. v. Sweeney,* 80 F. (2d) 235, and other Federal cases cited by defendant.

In *Sundheim v. Phila. School Dist.,* 311 Pa. 90, the question was, as it is here, whether a surety who had paid materialmen had a right superior to other creditors of the contractor to funds in the hands of the owner of the building. In that case, also, the surety had given construction bonds and additional bonds for the payment of materialmen and labor. There was no obligation in the construction contract to pay such claims, nor could the school district withhold payment of deferred percentages for that purpose. We held (p. 100) : "The only subrogated rights that surety could claim were those of the labor and materialmen it had paid, but they had no lien on the buildings, no right to the funds in the hands of the owner district, nor any contractual obligation on the part of the owner to see that they were paid. They, as labor and materialmen, had no right of subrogation against the owner. They had a claim against the contractor and it was to that claim the surety was subrogated, but that right did not extend to the contractor's money due and in the owner's hands, unless it was seized by legal process. To hold otherwise would be to give suretyship an exalted position in the ranks of creditors."

Distinguishing the decisions of the Federal courts cited, we said (pp. 96-97) : "Under federal statutes a

single bond is required which must provide for the completion of the contract and the payment of labor and materialmen. . . . It has been held by federal courts that there is a direct contractual obligation to the government as a party to the contract, binding on the contractor and surety, to pay labor and materialmen. Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States government. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It is therefore entitled to subrogation to the rights of the United States in the fund. . . . In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are in harmony with those decisions as illustrated by *Lancaster County National Bank's App.*, 304 Pa. 437." And see, in accord with the *Sundheim* case, *American Surety Co. v. Kunkle,* 117 Pa. Superior Ct. 525.

Defendant has endeavored to incorporate the additional bonds for labor and materials into the construction contract, to give it the effect of the contract involved in *Lancaster County National Bank's App.*, supra, by a general reference in the introduction of the contract: "It is understood and agreed that everything herein contained, as well as the proposal or bid, is hereby made part of the specifications and contract." These words manifestly are not sufficiently definite or pertinent to accomplish defendant's purpose, and the contract as a whole negatives the contention.

The finding of the court below that there was no default disposes of defendant's attempt to assert an equitable lien upon these funds through a conditional assignment contained in Feraco's agreement of indemnity and application for the bonds. It is there provided that defendant shall be subrogated, as of that date, to

Feraco's right in all such payments, "should the said Principal fail, or be unable to complete the said work *in accordance with the terms of the contract covered by said bond,* or in the event of any *default* on the part of the said Principal under the terms of said contract." (Italics added.) Obviously, the right of subrogation could have arisen only upon Feraco's breach or default upon the construction contract with the Commonwealth and the City. This did not occur. This case is therefore distinguishable from *American Surety Co. v. Finletter,* 274 Fed. 152; and *Street v. Pacific Indemnity Co.,* 79 F. (2d) 68, where defaults were acknowledged by the contractors and the work was completed by the sureties. In *Lacy v. Maryland Casualty Co.,* 32 F. (2d) 48, while there was no formal declaration of default, the surety, without waiting for such notice, took over the contract and completed it, after informing the highway commission of its intention. In the present case, defendant declined to finance or take over the contract, and it was completed by Feraco through the Snead Company.

There remains for consideration only the argument that defendant is entitled to the funds under the agreement of May 10, 1933, between Feraco and the Snead Company. Defendant asserts that this was, in effect, an assignment of the contract to that Company, and a surrender of Feraco's right to subsequent payments, except for such balance as should remain after payment of the fee and satisfaction of claims for labor and materials. It seems clear that there was no assignment of the contract. The agreement was, as stipulated at the pre-trial conference, for "the financing, supervision and completion of the work" for a stated compensation. None of the parties treated it as an assignment. The construction contract itself provides: "It is further distinctly agreed that the said contractor shall not assign this contract, nor any part thereof, nor any right to any moneys to be paid him hereunder, nor shall any part of the work to be done or material furnished under

said contract to be sublet, without the consent in writing of the Secretary of Highways." No written consent to an assignment was procured. On the contrary, the name of Feraco, as contractor, appeared upon the records of the Commonwealth and the City for the duration of the contract. Checks and warrants were issued payable to "F. Feraco" both before and after the execution of the Snead agreement. Although Snead was given a power of attorney to endorse these instruments for Feraco, there was no assignment of funds remaining in the hands of the Commonwealth and the City. At most, the agreement gave the Snead Company the right to receive payments as they were made, and defendant the right to be reimbursed by the Snead Company out of these payments for expenditures on behalf of Feraco. It did not confer upon defendant any special interest in funds still in the hands of the Commonwealth or the City for Feraco.

But, even if the agreement should be regarded as an equitable assignment of Feraco's interest in the funds in question, and if it be further assumed that defendant, rather than the Snead Company, was the assignee to the extent of its claim for reimbursement, the alleged assignment would be voidable under the provisions of the Bankruptcy Act, as amended, section 60 (b) [11 U. S. C. A. section 96 (b)]. The agreement was executed within the period of four months prior to the adjudication in bankruptcy. The claims for which defendant seeks reimbursement were paid by it in June and July, within the same four-month period. The funds were not received by it from the Commonwealth and the City until after the adjudication. Although it is a question of fact whether defendant had reasonable cause to know that the payment would constitute a preference, it is apparent from the record that it was familiar with Feraco's financial condition and his insolvency at the time the agreement was made. The payment of these funds to defendant did, in fact, constitute a preference of its claim.

That sureties may be the recipients of preferential transfers within the meaning of section 60 (b) is well settled. See *Gernerd v. Union Indemnity Co.,* 311 Pa. 169; *Kobusch v. Hand,* 156 Fed. 660; Remington, Bankruptcy, section 1681; 6 American Jurisprudence 696. And see also *Maryland Casualty Co. v. National Bk. & Tr. Co.,* 320 Pa. 129, 136. Nor would it matter that defendant, under the agreement, was to be paid indirectly through the Snead Company. In 6 American Jurisprudence, at p. 675, it is said: "The making of the transfer directly to the creditor is not essential to a preference. Such transfer may be made to another for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it." See *National Bank v. National Herkimer Co. Bank,* 225 U. S. 178. It must be borne in mind that under section 47 of the Bankruptcy Act (11 U. S. C. A. section 75), the trustee in bankruptcy has, as to property of the bankrupt not in the custody of the court, "all the rights, remedies and powers of a judgment creditor holding an execution, duly returned unsatisfied."

And it is equally obvious, in view of the foregoing, that defendant could not have obtained a preferential payment by virtue of the power of attorney given by Feraco to Snead, see *In re Columbia Shoe Co.,* 289 Fed. 465; Restatement of Agency, section 114.

Under these circumstances it is unnecessary to discuss whether the evidence offered by defendant to show the total expenses incurred by the Snead Company, and that some of these bills had been paid by defendant, should have been admitted. It may be added that such payments were not properly averred in the affidavit of defense.

While it is true that defendant is not unjustly enriched by these funds in the sense that they represent reimbursement for monies expended on Feraco's behalf,

nevertheless, if it is permitted to retain them, it will thereby obtain an unlawful preference by having its claim paid in full.

Judgment affirmed.