### PHILADELPHIA INDUSTRIAL CORPORATION

v.

### UPPER DUBLIN TOWNSHIP, PENNSYLVANIA.

No. 22348.

United States District Court
E. D. Pennsylvania.

Jan. 20, 1959.

A. J. Goldin, Philadelphia, Pa., for plaintiff.

Herbert A. Barton, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

The facts of this case are not in dispute. On February 4, 1955, the defendant, acting through its Commissioners, contracted with one Carl C. Stinson, trading as Stinson Construction Co.

(hereinafter referred to as "Stinson"), for the construction of sanitary sewers in North Hills Avenue, Upper Dublin Township, Montgomery County, Pa. On the same day, Stinson Construction Co., as required by law [1] and by the contract,[2] applied for and obtained from the London & Lancashire Indemnity Co., of Hartford, Conn., a performance bond and a labor and materialmen's bond.[3] The contract also provided that Stinson commence work 10 days after notified to do so and complete such work in 35 consecutive calendar days. If Stinson failed to complete the work within this time, he was required to pay to the defendant $25 as liquidated damages for each calendar day of delay until the work was completed.[4] The contract provided, further, that the contractor make payment within a specified time to his subcontractors and for his supplies, and that the defendant could withhold from the contractor payments due him so as to assure payment to the labor and materialmen until satisfactory evidence of payment of the labor and material bills was presented.[5]

On February 18, 1955, Stinson was notified by Albright & Friel, Inc., consulting engineers for defendant, to start work on the contract on February 28, 1955. The work to be performed under the contract was never completed by Stinson. This work was completed, upon demand of the defendant, by London & Lancashire Indemnity Co., the surety, at a cost of $2,600. The surety was also required to pay $7,221.54 for labor and supplies. On April 20, 1955, Stinson Construction Co. assigned to plaintiff, a Delaware corporation, amounts then or thereafter due and owing under the contract of February 4, 1955.[6] Notice of this assignment was given to the Commissioners of defendant. Stinson Construction Co. was adjudicated bankrupt on November 7, 1955. At the time of Stinson's default, defendant held the sum of $5,691.-35, representing the undistributed balance due under the contract upon completion of all the work. It was paid by defendant to the surety because it completed the work and paid the above-mentioned $7,221.54. It is this amount that plaintiff, as assignee, seeks to recover from defendant by this suit.[7]

Defendant justifies its payment of this sum to the surety, instead of to plaintiff as assignee, on the ground that the surety, by completing the work and by performing Stinson's obligations to the labor and materialmen, became subrogated to the rights of the defendant-owner by reason of clause 14(e) of the contract—the withholding clause.[8] Plaintiff, on the other hand, asserts that the withholding

1. 53 P.S. §§ 56802(c) (performance bond) and 56804 (labor and materialmen's bond).

2. Article 24(a) and (b) of Contract Document (see Exhibit P-1).

3. See Exhibit P-1A.

4. Article 1 of Contract Document (Exhibit P-1).

5. Article 14(c), (e) and (f).

6. See Exhibit P-4.

7. Plaintiff originally claimed the amount of $5,691.35. At trial, however, it conceded to reduce this amount by $2,600, the amount expended by the surety in completing this job.

8. Clause 14(e) of the Contract Document provides as follows:
"(e) The Owner may withhold from the Contractor so much of any approved payments due him as may in the judgment of the Owner be necessary in order (1) to assure the payment of just claims then due and unpaid of any persons supplying labor or materials for the work; (2) to protect the Owner from loss due to defective work not remedied; or (3) to protect the Owner from loss due to injury to persons or damage to the work or property of other contractors, sub-contractors or others, caused by the act or neglect of the Contractor or of any of his sub-contractors. The Owner shall have the right as agent for the Contractor to apply any such amounts so withheld in such manner as the Owner may deem proper to satisfy such claims or to secure such protection. Such application of such money shall be deemed payments for the account of the Contractor."
Clause 14(f) contains this language:
"(f) Upon completion of all work whatsoever required, the Engineer shall file a written certificate, with the Own-

clause in the contract was inserted by defendant without authority and is, therefore, invalid. If such is the case, plaintiff argues, defendant could only be obligated to the prime contractor, Stinson, and defendant's theory of subrogation could not be validly asserted.

Thus, the principle issue to be determined in this case is whether or not defendant-township had authority to provide in its contract with Stinson for the withholding of payments becoming due under the contract as assurance for the payment of the labor and material bills.[9] The cases cited by plaintiff which are most strongly in its favor in support of its contention that such a clause is invalid are McCarthy v. Bridgeport Boro, 1930, 299 Pa. 305, 149 A. 484, and Lesley v. Kite, 1899, 192 Pa. 268, 43 A. 959. In the McCarthy case, the municipality's contractor defaulted at a time when the municipality owed him more than $3,000 for work already done. The contractor's surety completed the job and took an assignment from the contractor for the money due. The surety demanded the money from the municipality. The municipality refused on the ground that, since the contract required the contractor to furnish before final payment satisfactory evidence that all labor and materialmen had been paid, and since this was not done, it need not pay the money due. In the suit by the contractor for the use of the surety, the court entered judgment for the contractor. This case, however, is distinguishable on its facts from the case before this court. First, it should be noted that McCarthy was suing for money due him for work he had already performed. Second, the basis for the court's decision was that there was no privity between the municipality and the labor and materialmen. The court particularly emphasized the contractor's obligation to defend the municipality from suit for nonpayment of labor and material claims. Thus, the court concluded, where the municipality is not liable for the claims of labor and materialmen, it cannot withhold from its prime contractor money he owes to his subcontractors. This case does not meet the precise issue presented by the present case, since there was no withholding provision in the contract involved. Left unanswered, therefore, are the questions of whether or not such a clause would be valid and, if so, whether or not its insertion in the contract would create a privity between the municipality and the labor and materialmen. The force of the McCarthy case, for plaintiff's purposes, comes from its reliance on Lesley v. Kite, supra. This was a bill in equity by a subcontractor for the appointment of a receiver to take the money in the hands of the municipality due the contractor and distribute it proportionally among the subcontractors. This bill was based on city ordinances providing that the contractor present evidence of full payment to his suppliers before receiving final payment, which was to be made upon approval of the Director of Public Works. The court, in holding that such an ordinance was unenforceable by the subcontractors, said in 192 Pa. at page 274, 43 A. at page 961:

"It is unnecessary to multiply authorities for the purpose of showing that city councils have no authority

---

er and with the Contractor, as to the entire amount of work performed and compensation earned by the Contractor, including extra work and compensation therefor. Within thirty days after the filing of such certificate of completion provided the Contractor shall have furnished releases of all liens and settled all claims arising out of the contract, including all insurance damage claims, the Owner shall pay to the Contractor the amount therein stated, less all prior payments and advances whatsoever to

or for the account of the Contractor and less the retained percentage covering the one year guarantee and maintenance. All prior estimates and payments, including those relating to extra work shall be subject to correction by this payment, which is throughout this contract called the Final Payment."

9. Under the rule established by Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, this question is to be determined by the law of Pennsylvania.

whatever, express or implied, to provide a new remedy in the nature of an attachment, lien, or trust of any kind whereby subcontractors may enforce payment of their claim out of money due the principal contractor. On the grounds of public policy the legislature has hitherto withheld from contractors and subcontractors, not only the right of lien on public buildings, but also the right of attaching money in the hands of the city. On the same principle, it cannot be successfully contended that councils may by ordinance empower the director of public works to retain money due one of the city's contractors in order that his creditors, who are not parties to the contract, may proceed by bill in equity, or otherwise against him, and thus have the money applied to their claims. In other words, city councils are powerless to provide any remedy to be used as a substitute for attachment or any other remedy which the legislature has heretofore withheld on grounds of public policy, or otherwise."

But here, as in the McCarthy case, the court held that a municipality cannot withhold money due a contractor to see that his creditors are paid, since there was no contractual relation between such creditors and the municipality. In any event, the effect of that portion of the opinion quoted above has been rendered a nullity by subsequent authorities.[10] The implication to be derived from these authorities is that the insertion of a withholding clause such as the one involved here would be valid and would protect a surety who paid the labor and material bills of a defaulting contractor

against the claims of such contractor from the municipality. See Mock v. Bechtel, 1931, 101 Pa.Super. 181; Sundheim v. Philadelphia School Dist., 1933, 311 Pa. 90, 166 A. 365; Maryland Casualty Co. v. National Bk. of Germantown & Trust Co., 1936, 320 Pa. 129, 182 A. 362; DuBois v. United States Fidelity & Guar. Co., 1941, 341 Pa. 85, 18 A.2d 802. [11] In Com. to use v. Empire State Surety Co. (No. 1), 1912, 50 Pa.Super. 404, which involved the question of whether or not the officers of the state exceeded their authority in requiring the contractor and its surety to provide in their bond for a right of action against them by the labor and materialmen, in view of a statute which clearly intended that such bond be for the protection of the state alone, the court said at page 413:

"If it were not for the limitation of the amount of the bond and the legislative intent expressed in the present case it would be otherwise, for we would then have no difficulty in finding that it is within the power of the proper officers of the state in entering into an agreement on behalf of the state for improvements to insert such a stipulation in the bond even without statutory authority for so doing, where there is no statutory direction to the contrary.

"We conclude it now to be the law that the common-law rule that there can be no recovery except where there is privity of contract between the plaintiff and the defendant may be set aside by express statutory provision where the intention of the statute is clearly expressed for that purpose and even in the absence of such statutory provisions the rule may be waived by a contract volun-

10. The Acts of May 10, 1917, P.L. 158, §§ 1 and 2, and of May 6, 1925, P.L. 546, which were passed after the decision in Lesley v. Kite, supra, and are now embodied in 53 P.S. § 56804, reveal that the legislature has seen fit to protect labor and materialmen engaged by a contractor doing public work by requiring the contractor to give an addi-

tional bond for the payment of all claims of such subcontractors upon which they can sue the contractor in the name of the political subdivision.

11. The last three of these cases are relied on by plaintiff. However, the court's specific reference to the absence of a withholding provision distinguishes them from the present case.

tarily entered into with a state or municipality, provided there is no statutory provision to the contrary; * * *."

No statute in force at this time which would invalidate the withholding provision of this contract has been brought to the attention of the trial judge. Where the withholding clause has been inserted for the benefit of the labor and materialmen, it has been sustained and applied for the protection of the surety. See Lancaster Co. Nat. Bank's Appeal, 1931, 304 Pa. 437, 155 A. 859. This case is most nearly in point with the present case. The contract between the state and the contractor provided for the withholding of the semi-final or final payments until evidence was presented that labor and material claims had been settled. The contractor assigned to its surety the money due it if there was a default. After completing most of the work, the contractor borrowed money from the Lancaster Bank. The court assumed that the contractor assigned to the bank the money due it on the contract. Before the semi-final or final payment, the contractor defaulted and the surety paid the labor and material bills. The contest between the surety and the bank as to who was entitled to the payments involved was resolved in favor of the surety. The court said in 304 Pa. at page 443, 155 A. at page 861:

"(The assignee-bank) knew, * * * that the statute, the contract, and the bond made the rights of the materialmen and workmen paramount to those of the contractor, and that upon these provisions the materialmen, workmen, and surety had a right to rely."

It is to be noted that the Lancaster Co. Nat. Bank case was cited in Sundheim v. Philadelphia School Dist., supra, where the court said in 311 Pa. at pages 96–97, 166 A. at page 367:

"In construing these acts appellant applies the decisions of the federal courts. Under federal statutes a single bond is required which must provide for the completion of the contract and the payment of labor and materialmen. 40 U.S.C.A., § 270, 36 Stat. 1167. It has been held by federal courts that there is a direct contractual obligation to the government as a party to the contract, binding on the contractor and surety, to pay labor and materialmen. Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States government. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It is therefore entitled to subrogation to the rights of the United States in the fund. Subrogation does not arise through the contractor, but from the government's rights. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guar. Co. of Baltimore, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; In re Scofield Co., 2 Cir., 215 F. 45. In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are in harmony with those decisions as illustrated by Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, 861."

And at page 103 of 311 Pa., at page 370 of 166 A., the court said:

"'We have no doubt that an express executory contract in writing whereby the contracting parties sufficiently indicate an intention to make some *particular property or fund therein described* the security for a debt or other obligation creates an equitable lien on the property so indicated * * *, but there must be such an identification of the fund and such a transfer of it as would clearly indicate that intention."

Clause 14(e) [8] of this contract satisfies this last requirement. It is also apparent, from the authorities cited above,[12] that the defendant was authorized to insert such a clause and that such a clause is valid. The effect of such clause was to subrogate London & Lancashire Indemnity Co. to the rights of the defendant in the amount retained as soon as it made the payments for labor and materials. There was a privity created by this clause between the defendant-municipality and the labor and materialmen. Therefore, as between plaintiff and London and Lancashire Indemnity Co., the latter was entitled to the fund. Since the defendant was thereby justified in turning this fund over to the surety, judgment will be entered in its favor.[13]

---

8. See note 8 on page 726.

12. For a discussion and application of the principal authorities cited in this opinion to facts similar to those involved in this action, see In re L. H. Duncan & Sons, 3 Cir., 1942, 127 F.2d 640.

13. One other ground asserted by defendant in opposition to plaintiff's claim is that, since the amount due defendant from Stinson as liquidated damages is well in excess of the amount owing under the contract, defendant could in no way be obligated to plaintiff. Plaintiff denied liability to defendant by reason of the liquidated damage provision of the contract on the grounds that defendant's payment to the surety of the balance in hand without asserting its claim for liquidated damages constituted a waiver of such claim and that, in any event, Stinson's subsequent bankruptcy tolls enforcement of this claim after such adjudication. However, in view of the disposition of the issue discussed in the opinion, it is not necessary to decide this point. The briefs and letters citing authorities filed by counsel have been placed in the Clerk's file.