**FRIENDLY ICE CREAM CORPORATION for the use of S. M. ARONOW CO., a New Jersey corporation, Plaintiff,**

v.

**ANDREW E. MITCHELL & SONS, INC., a Delaware Corporation and Carr Construction, Inc., a Connecticut Corporation, Defendants.**

Superior Court of Delaware,
New Castle.

June 10, 1975.

Michael P. Maguire, of Czajkowski & Maguire, Wilmington, for plaintiff.

Joseph A. Calvarese, Jr., of Killoran & VanBrunt, Wilmington, for defendant Carr Construction, Inc.

TAYLOR, Judge.

Use-plaintiff, S. M. Aronow Co. [Aronow] furnished labor and materials on the premises of Friendly Ice Cream Corporation at the Concord Mall. The contractual hierarchy is as follows: Friendly Ice Cream Corporation [Friendly], owner or lessee, contracted with Carr Construction, Inc. [Carr], which in turn contracted with

Andrew E. Mitchell & Sons, Inc. [Mitchell], which in turn contracted with Aronow. Aronow's only direct contractual relationship was with Mitchell. Carr seeks to be eliminated from the case on the basis that no contractual relationship or other basis has been shown by which it is liable to Aronow.

■ Aronow's first contention is that an affidavit and certification executed by Carr and delivered to Friendly created third-party beneficiary rights which Aronow is entitled to assert. The affidavit-certification stated, inter alia:

"3. That each and every laborer, materialman, supplier and/or contractor or subcontractor engaged or hired by the undersigned in connection with the Project, said contract or any supplemental contract or extra work order relating to any of the foregoing has been paid in full, and that no person or entity now has the right to impose liens of any nature whatsoever, arising out of the Project, said contract, or any of the foregoing."

The quoted language constitutes two representations by Carr to Friendly. The first is that every laborer, materialman, supplier and/or contractor or subcontractor "engaged or hired by the undersigned [Carr] in connection with the Project . . . has been paid in full". With respect to this representation, it is confined to those who were engaged or hired by Carr. Aronow did not fall within that category. The second representation is that "no person or entity now has the right to impose liens of any nature whatsoever arising out of the Project . . .". Accepting the proposition that Aronow supplied material and labor on this project, and assuming that the period within which Aronow could have filed a mechanics' lien had not expired, this representation was untrue.

Aronow relates the affidavit-certification to the holding in Royal Indemnity Company v. Alexander Industries, Inc.,

Del.Supr., 211 A.2d 919 (1965) which held that a subcontractor who furnished labor and material on a job was entitled to recover, as a third-party beneficiary, under a payment bond furnished by a general contractor pursuant to his contract·with the owner. The surety bond assured that the contractor would "do and perform" all things specified in the contract, and the contract, in turn, required that "the contractor shall provide and pay for all materials, labor . . . and other items necessary to complete the work". Certain distinctions between the present situation and *Royal* are evident. First, the affidavit-certification does not purport to be an agreement and does not purport to embody any prospective undertakings. Second, the affidavit-certification made no commitment as to the application of the funds to be received from Friendly. Third, the quoted representations purport to refer to completed or existing conditions as of the time of affidavit-certification. Fourth, as noted above, the reference to payment is confined to those who were engaged or hired by the undersigned [Carr]. Fifth, there is no indication that the representation with respect to the non-existence of the right to impose liens was intended to benefit anyone other than the owner or lessee of the property against which the lien might be asserted.

Based upon the above considerations, I find no basis under contract law, whether under the third-party beneficiary concept or otherwise, establishing liability of Carr to Aronow.

■ Next, Aronow supports his claim on the theory of negligent failure of Carr to see that payment was made to Aronow. In support of this proposition, Arnow cites Murphy v. Godwin, Del.Super., 303 A.2d 668 (1973). An action based upon this theory requires a violation of a legally recognized duty owed by Carr to Aronow. Aronow's reasoning is that Carr took upon itself to represent to Friendly that all parties engaged in the project had been paid,

and that Carr's failure to ascertain whether the parties had been paid constituted negligent conduct. According to *Murphy,* liability for negligent nonfeasance is dependent upon "some already existing and definite relationship between the parties 'of such a character that social policy justifies the imposition of a duty to act'." In *Murphy,* the Court proceeded from the position of plaintiff that a pre-existing doctor-patient relationship existed. The Court then reviewed the facts to ascertain whether the inaction of the doctor violated his duty of reasonable care growing out of the doctor-patient relationship. It appears that the liability under this theory must depend on a showing of a direct relationship between Aronow and Carr. There has been no showing of the existence of such relationship. The record does not disclose that there was any dealing or contact between Aronow and Carr.

■ Finally, plaintiff contends that Carr held the funds as trustee, and as such, had a duty to see that the funds were properly disbursed. This contention is predicated upon 6 *Del.C.* § 3502. This section provides that all monies and funds received by the contractor in connection with the contract are trust funds in the hands of the contractor. The next section, § 3503, provides:

"No contractor, or agent of a contractor, shall pay out, use or appropriate any moneys or funds described in section 3502 of this title until they have first been applied to the payment of the full amount of all moneys due and owing by the contractor to all persons (including surveyors and engineers) furnishing labor or material (including fuel) for the erection, construction, completion, alteration or repair of, or for additions to, such building . . ."

§ 3504 provides:

"Failure of a contractor, or of an agent of a contractor, to pay or cause to be paid, in full or pro-rata, the lawful claims of all persons, firms, association of persons or corporations (including surveyors and engineers), furnishing labor or material (including fuel), as required by section 3503 of this title, within 30 days after the receipt of any moneys or funds for the purposes of section 3502 of this title, shall be prima facie evidence of the payment, use or appropriation of such trust moneys or funds by the contractor in violation of the provisions of this chapter."

Aronow does not contend that Carr has not made payment in full to those to whom it had a direct contractual obligation. Aronow's contention is that Carr had a duty under the above-quoted provisions to see that those who furnish labor or material for the construction were paid out of the funds which Carr paid to its direct subcontractor. While it is undoubtedly true that under this provision, Mitchell had a duty to make payment to Aronow out of the funds which Mitchell received from Carr, no authority has been submitted in support of the proposition that under the statutory provision quoted above, Carr had a duty to follow the funds through Mitchell to Mitchell's subcontractor to see that the subcontractor was paid by Mitchell. In fact, § 3503 appears to deal with the requirement that the contractor or agent of the contractor must apply the funds to payment of "all moneys due and owing by the contractor to all persons" [underscoring added]. Assuming that this requirement extends to a subcontractor, the statutory reference to monies "due and owing by the contractor" would make the trust relationship inapplicable to this situation, since no money was due from Carr to Aronow. This would appear to limit the trust principle to direct obligations of the party who received the funds. As has been noted above, there was no direct obligation from Carr to Aronow. The Delaware cases of State v. Tabasso Homes, Del.Gen.Sess., 3 Terry 110, 28 A.2d 248 (1942), Maull v. Stokes, 31 Del.Ch. 188, 68 A.2d 200 (1949), and State v. Pierson, Del.Super., 7 Terry

558, 86 A.2d 559 (1952), other than dealing with the general principle inherent in the statutory provision, are not of assistance in determining this issue.

The motion of Carr for judgment on the pleading is granted.

It is so ordered.