420 A.2d 477

B. BORNSTEIN & SON, INC.

v.

R. H. MACY & COMPANY, INC., Springpenn Properties Corp., Powertherm Corporation, Belfi Bros. & Co., Inc., Berger Acoustical Company, Inc., Ceilings, Inc., Consho Construction Co., Diebold, Inc., J. B. Eurell Co., Gerngross Corporation, Grinnell Fire Protection Systems Co., Inc., John B. Kelly, Inc., Moriarity–Hoffner, Inc., Powertherm Corporation, L. N. Scott Co., Suburban Enterprises–Terrazzo & Tile Co., Inc., Harold E. Sweeney Corp., United Drywall Corp., United Pacific Insurance Company, Whelan Manufacturing Co., Williard, Inc.

Appeal of POWERTHERM CORPORATION.

Appeal of CONSHO CONSTRUCTION CO.

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed April 25, 1980.

Reargument Denied Sept. 15, 1980.

158

Paul J. Donnelly, Philadelphia, for appellants.

Marc J. Sonnenfeld, Philadelphia, for appellees.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SPAETH, Judge:

This is an appeal from an order entering summary judgment and directing the pro–rata distribution of funds in the court's possession.

This action has its origins in a contract between B. Bornstein and Son, Inc., a construction company, and Springpenn Properties Corp., which is a wholly owned subsidiary of R.H. Macy and Company, Inc., for the construction of a Bamberger's department store in Delaware County. When the store was completed, there remained due a contract balance of $147,396.00. Under the terms of the contract, Bornstein could not receive this balance until it delivered to Macy–Springpenn satisfactory evidence that all subcontractors and materialmen had been paid and a release of liens signed by all persons who had either supplied material or worked on the project.[1] When Bornstein failed to deliver such evidence

---

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

1. Bornstein failed to comply with the following provision of the contract:

Prior to receiving final payment, and from time to time during the course of the work if required by Owner, Contractor agrees to furnish satisfactory evidence that all of Contractor's employees, subcontractors and suppliers of materials or equipment used in the work covered by this agreement have been paid in full, and to execute and deliver to Owner a full and complete release of liens, signed by or on behalf of all persons who have had a part in supplying materials or equipment or performing any of the work covered by this agreement.

Article XI, Section (f).

The contract also provided:

Upon completion of the work by Contractor in accordance with the Drawings, Specifications and General Conditions, Contractor shall tender the work to Owner and if Owner shall accept the work, the remaining balance due hereunder shall be due to the Contractor within thirty (30) days after delivery to Owner of Contractor's final statement and the certificate hereinafter mentioned. Final payment shall be conditioned upon the receipt by Owner of a final statement covering all items under this agreement, together with receipts for all expenses incurred by Contractor pursuant hereto,

or release, Macy–Springpenn withheld the balance, although no subcontractor or materialman had filed any lien against the project. Bornstein then brought suit against Macy–Springpenn to recover the balance. Macy–Springpenn filed a petition for interpleader on the ground that various of Bornstein's subcontractors and materialmen had not been paid. The lower court granted the petition, and Macy–Springpenn paid the $147,396.00 balance into the court. Twelve of Bornstein's subcontractors, including appellee Williard, Inc., filed claims totalling $341,363.84. Three of Bornstein's judgment creditors, one of which was appellant Consho Construction Company, filed claims unrelated to the Bamberger's project. Three of the subcontractors, including Williard, filed alternative claims as judgment creditors, and one of them, appellant Powertherm Corporation, filed an alternative claim as a judgment creditor and another alternative claim as an assignee of Bornstein's right to the contract balance. Williard then filed a motion for summary judgment on behalf of the twelve subcontractors. The motion asked that claims not filed on behalf of unpaid subcontractors be dismissed, and that the contract balance paid into court be distributed among the twelve unpaid subcontractors on a pro rata basis. The lower court granted the motion, and Consho and Powertherm appealed; these appeals were consolidated and will be disposed of together.[2]

> including receipted invoices, substantiating the last previous statement rendered, statements properly signed by all subcontractors and materialmen of Contractor that they have been paid in full upon which Owner may rely, and a certificate of Contractor to the effect that all bills and claims incurred in the furtherance of the work, whether by Contractor or any subcontractor engaged by Contractor have been satisfied.
> Article III, Section (c).

**2.** Subsequent to the appeals, the lower court ordered that half of the funds in its custody be distributed to the unpaid subcontractors; the court retained the other half pending the outcome of the appeals. Record at 108a–109a. Appellants seek only the funds still in the court's possession. Appellant's Brief at 29. All of the unpaid subcontractors are appellees, but inasmuch as appellee Williard has filed a brief on behalf of all of them, we shall hereafter simply refer to "appellee."

In its opinion justifying its order, the lower court held that Bornstein had materially breached its contract with Macy–Springpenn when it failed to deliver satisfactory evidence of payment of subcontractors and materialmen and the requisite release of liens. Having thus decided that neither Bornstein, its creditor Consho, nor its assignee Powertherm had any right to the withheld balance, the court held that the twelve unpaid subcontractors were entitled to it. The court based its holding on two grounds: first, it would be "inequitable and unjust" to permit Macy–Springpenn to keep the balance when the subcontractors had outstanding claims against Bornstein: and second, the subcontractors were third party beneficiaries of the contract between Macy–Springpenn and Bornstein.

–1–

■ We find ourselves unable to agree with the lower court that Bornstein's failure to deliver satisfactory evidence that all subcontractors and materialmen had been paid and a release of liens constituted a material breach of the contract. As noted above, no claimant had filed a lien against the project at its completion. Nor could any such lien be filed when Macy–Springpenn filed its petition for interpleader, for by then more than four months had elapsed since the completion of the work. 49 P.S. § 1502 (Purdon's 1965). In *C.A. Klinges, Inc. v. Camblos Construction Corporation*, 194 Pa.Super. 585, 168 A.2d 916 (1961), this court faced a similar case. Klinges, an unpaid subcontractor with a judgment against the Camblos Construction Corporation, was trying to garnish funds in the possession of the Trustees of the University of Pennsylvania. The Trustees had entered into a contract with the Camblos Construction Corporation, by the terms of which the Trustees were permitted to withhold final payment until the construction company had delivered a "complete release of all liens arising out of this contract, or receipts in full covering all labor and materials for which a lien could be filed, or a bond satisfactory to the [Trustees] indemnifying [them] against any lien." 194 Pa.Super. at 588, 168 A.2d at 917. In holding that the subcontractor

could garnish the funds as properly belonging to Camblos Construction Company, we stated that the construction company's failure to file the requisite release of liens was not a material breach of its contract because no liens had been filed against the owner's property and none could be since the statutory period had passed. We noted: "[T]he [owner] has received all it could have hoped to receive under the terms of this contract, and stands in a position to lose nothing by the payment of [the contract balance]." 194 Pa.Super. at 591, 168 A.2d at 919. Moreover, in *Getty v. Pennsylvania Institute for Instruction of the Blind*, 194 Pa. 571, 45 A. 333 (1900), another case in which an owner withheld a contract balance because a contractor had not submitted proper evidence that all subcontractors and materialmen had been paid, the Supreme Court stated that the contractor would be entitled to withheld balance when it furnished the owner with the required acknowledgements of payment "or when, under the limitations of the mechanic's lien law, the [owner] is beyond peril as to liens against its buildings and grounds, . . . ." 194 Pa. at 576, 45 A. at 334.

The lower court attempted to distinguish *Klinges* by pointing out that the contract in that case, unlike the one here, lacked a "no–lien" provision. To the extent that this is a distinction, it makes *Klinges* more, not less, applicable. The presence of a "no–lien" provision demonstrates Macy–Springpenn's concern that no liens would be filed against its property. Accordingly, when that danger had passed Macy–Springpenn "[stood] in a position to lose nothing by the payment of [the contract balance]."

Appellee has cited several cases, in particular *Jacobs v. Northeastern Corporation*, 416 Pa. 417, 206 A.2d 49 (1965), and *Lancaster Co. Nat. Bank's Appeal*, 304 Pa. 437, 155 A. 73 (1931), for the proposition that Bornstein committed a material breach of its contract with Macy–Springpenn.[3] These

3. In this regard, appellee has also cited *Adelphia Automobile Sprinkler Company v. Commonwealth Land Title Insurance Company*, No. 75–1469 (E.D.Pa., filed Oct. 27, 1976); *Van Etten v. N. Y. State Natural Gas Corp.*, 192 F.Supp. 837 (E.D.Pa.1961); and *Atlantic*

cases are discussed later in this opinion, in a different context.[4] For the moment it is enough to say that we do not find them inconsistent with *Getty* and *Klinges.* In both *Jacobs* and *Lancaster* the issue was whether a surety was entitled to recover funds it had paid subcontractors, upon the contractor's failure to pay the subcontractors. In neither case was the Court obliged to decide whether the contractor had materially breached its contract with the owner.

No material breach having occurred, Bornstein had a right to the balance due on its contract with Macy–Springpenn. It follows that appellants as judgment creditors and appellant Powertherm as assignee have a right in Bornstein's place[5] to proceed against that part of the unpaid balance that was paid into and has been withheld by the lower court.

–2–

The foregoing conclusion does not end our inquiry, for we must still determine what right to the withheld balance the unpaid subcontractors may also have.

–a–

One possible basis of a right by the unpaid subcontractors to proceed against the withheld balance would be evidence of an independent promise by Macy–Springpenn that as owner it would pay the subcontractors if Bornstein as contractor did not. Appellants contend, however, that there was no such independent promise; in support of this contention they cite *Demharter v. First Federal S. & L. Assn. of Pittsburgh,* 412 Pa. 142, 194 A.2d 214 (1963).

*Refining Company v. Continental Casualty Co.,* 183 F.Supp. 478 (W.D.Pa.1960).

4. *See* Section 2, *infra.*

5. As Bornstein's judgment creditors and assignee, appellants could only recover the balance if Bornstein had a legal or equitable interest in it. *See Central Surety and Insurance Corp. v. Martin Infante,* 272 F.2d 231, 234–35 (3rd Cir. 1959).

In *Demharter*, an owner of certain property, acting as its own contractor, and First Federal had signed a loan agreement providing that First Federal should " '8. Pay out of the funds to contractors, subcontractors, or material men, *as the [First Federal] may elect*, for work performed, services rendered and materials furnished in and about the construction of the building.' " 412 Pa. at 152, 194 A.2d at 219. (Emphasis added by Supreme Court) When the owner defaulted on payments to subcontractors, the subcontractors tried to recover from First Federal. In holding that they could not, the Supreme Court stated:

> Paragraph 8 clearly spells out that the determination *whether any payment should be made* to persons in plaintiffs' status and, if so, *when* and *in what amount* rested exclusively within the discretion and the judgment of First Federal. First Federal had the *right*, at its election, to make such payments, but not the *duty* to do so. Nothing in this Agreement *obligated* First Federal to make any payment to any "subcontractors" or "material men," whether they be in the status of third party beneficiaries or not. If, *and only if*, First Federal elected to do so would any payment be made. This Agreement contains no actionable promise to the suppliers of labor and materials which can be enforced by them. The *right to pay* is vastly different from the *duty to pay* ; only the latter can be enforced.

> 412 Pa. at 153, 194 A.2d at 219. (Emphasis in original.)

■ Article XI, section (f), of the contract between Macy–Springpenn and Bornstein as contractor provides as follows:

> If at any time there shall be evidence that Contractor has not paid what is due to any subcontractors or parties furnishing Contractor with labor or materials, Owner shall have the right, but not the obligation, to retain out of any payment then due, or thereafter to become due to Contractor, an amount sufficient to pay such claim. Should there prove to be any such claim after all payments have been made to Contractor, Contractor shall refund to Own-

er all monies that Owner may pay in discharging any such lien or liability.

Article XI, section (f), further provides:

Nothing in this agreement shall create any obligation on the part of Owner to pay to or see to the payment of any sums to any subcontractor of Contractor or to anyone furnishing labor or materials to Contractor.

We find no substantial difference between these provisions and the provisions considered by the Supreme Court in *Demharter.* We therefore conclude that the contract between Macy–Springpenn and Bornstein "contains no actionable promise . . . which can be enforced by [the unpaid subcontractors]." 412 Pa. at 153, 194 A.2d at 219.

–b–

A second possible basis of a right by the unpaid subcontractors to proceed against the withheld balance would be evidence that the subcontractors were third party beneficiaries of the contract between Macy–Springpenn and Bornstein.

The principles to be applied in deciding whether the subcontractors were such third party beneficiaries are settled. In *Spires v. Hanover Fire Ins. Co.,* 364 Pa. 52, 70 A.2d 828 (1950), the Supreme Court stated:

To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear in the contract itself: *Klinger v. Wick,* 266 Pa. 1, 5, 6, 109 A. 542, 543 (1920); 17 C.J.S. Contracts, § 519(c) pp. 1127–1130; 12 Am.Jur. 831, 832, § 280, 833, 834, § 281. [Footnotes omitted.]

364 Pa. at 56–57, 70 A.3d at 830. (Emphasis supplied.) In *Silverman v. Food Fair Stores*, 407 Pa. 507, 509, 180 A.2d 894, 895 (1957), the Court stated that "[t]he question of whether a contract was intended for the benefit of a third person is always one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made."

We have already noted that the contract here provides that the subcontractors are not to file liens on the property, and that if any of the subcontractors nevertheless does file a lien, Macy–Springpenn as owner may withhold payment. The contract also provides that Macy–Springpenn may terminate Bornstein's status as contractor on fifteen days notice if Bornstein "should fail to make prompt payment to subcontractors or for material or labor." Article XII, section (b). These provisions manifest an obvious intent by Macy–Springpenn to protect itself from any claims of Bornstein's subcontractors. In other words, the provisions were included in the contract for the benefit of Macy–Springpenn; so far as the subcontractors are concerned, any benefit is at best incidental.

Again, *C. A. Klinges, Inc. v. Camblos Construction Corporation, supra* and *Getty v. Pennsylvania Institute for Instruction of the Blind, supra,* are instructive. In *Klinges,* after concluding that the contractor was entitled to the withheld balance, this court stated:

Any protection given the subcontractors by the insertion in the contract of the indemnifying clause would be purely incidental. The great weight of authority holds that even though bond has been given in this instance a claim by the subcontractor against the surety could not stand, since the only reason for its insertion in the contract is to protect the garnishee, the owner of the buildings, from the possibility of mechanics' liens being filed against the buildings by the subcontractors.

194 Pa.Super. at 591, 168 A.2d at 919.

In *Getty,* after concluding that the owner was justified in withholding the final balance until it could be sure that no liens would be filed against the property, the Supreme Court stated:

If the contract had provided that, on the failure of the principal contractors to deliver the written acknowledgments specified, the money should be withheld from them, *for the benefit of all the subcontractors who had not been paid, it might have been forcibly argued that such a provision constituted an equitable assignment of the fund for their benefit. But that is not the contract.* It provides that the money shall not be paid to the principal contractors until the written acknowledgments are obtained. Obviously, *this is for additional protection to the owner.* True, it has secured an express waiver of right to file liens; but it may choose to take no chance of harassing litigation by wronged subcontractors and material men, and may insert as many provisions, not for the benefit of subcontractors, but for its own protection, as it chooses.

194 Pa. at 575, 45 A. at 334. (Emphasis added.).

*Accord Friendly I.C. Corporation v. Andrew Mitchell and Sons, Inc.,* Del.Super., 340 A.2d 168 (1975); *Holiday Development Co. v. J. A. Tobin Const. Co.,* 219 Kan. 701, 549 P.2d 1376 (1976); *Cerp. Construction Co., Inc. v. Cleary, Inc.,* 59 Misc.2d 489, 299 N.Y.S.2d 560 (1968) (Supreme Ct., Trial Term, Kings County); *Moss v. West Tacoma Newsprint Company,* 1 Wash.App. 361, 462 P.2d 256 (1969). *Contra Avco Delta Corporation Canada Ltd. v. United States,* 484 F.2d 692 (7th Cir. 1973), *cert. denied,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974).

*Klinges* and *Getty* control our decision here. If anything, the contract before us has more provisions protecting the owner than the contracts in *Klinges* or *Getty.* Since, therefore, the subcontractors are no more than incidental beneficiaries of the contract, they are not entitled to recover it. *Hillbrook Apts. v. Nyce Crete Co.,* 237 Pa.Super. 565, 352 A.2d 148 (1975). This conclusion, it may be added, is con-

firmed by the express provision, already discussed, that Macy–Springpenn as owner has no obligation (although it could choose) to pay the subcontractors if Bornstein as contractor failed to pay them.

—c—

Appellee contends that there is a third possible basis of a right by the unpaid subcontractors to proceed against the withheld balance. It characterizes this right as an "equitable obligation" on the part of an owner to pay subcontractors and materialmen for value received, and in support of its existence, particularly cites *Jacobs v. Northeastern Corporation, supra.*

In *Jacobs*, the contractor had as part of its contracts with two public agencies expressly undertaken to pay the labor and materialmen. When the contractor defaulted in its payments to the labor and materialmen, the sureties made payments in compliance with the bonds that had accompanied the contracts. At the time the sureties made these payments, there remained outstanding contract balances due the contractor. Both the contractor's receiver and the sureties tried to recover the balances. In holding for the sureties, the Court stated:

> Labor and materialmen involved in public construction are a group specially protected by statute as well as by these particular contracts. Payment to them is secured by the bond of the contractor's surety. The funds available for the protection and payment of these claims are separate and apart from the relationship between the contractor and his general creditors. This is so irrespective of whether there exists a surety bond for payment. The execution of the surety bond for this special but well known purpose in no way involved or prejudiced the general creditors or the receiver.

> The sum retained by the Commonwealth was an added mechanism for achieving performance, as well as providing a further resource for paying labor and materialmen, especially since that sum is less than the total amount due

those claimants. Had the surety not paid the labor and materialmen, the funds held by the Commonwealth agencies would not have been available to the general creditors. Since the sureties stand in the places of those whose claims they have paid, as persuasively pointed out in *Pearlman* [*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)], the funds must be paid to the sureties, just as the funds would have gone, in the absence of a bond, to the labor and materialmen rather than to the general creditors. *See Prairie State Bank v. United States*, 164 U.S. 227, 239, 17 S.Ct. 142, 147, [41 L.Ed. 412] (1896), quoted in *Pearlman*.

416 Pa. at 427, 206 A.2d at 53.

Appellee reads this language as announcing a "rule . . . [that] protects both sureties and subcontractors and materialmen in 'no–lien' construction contracts." Appellee's Brief at 24.

We do not read *Jacobs* as announcing so broad a rule. In deciding the effect to be given the opinion in any case, it is always essential to read the opinion in the context of the issue that was before the court. In *Jacobs* the issue before the Supreme Court was what right the sureties had to the withheld balances, which is quite a different issue than the issue before us. Thus in *Jacobs* the Court noted that under prior Pennsylvania case law, a surety could only recover if the contractor was expressly obligated by the construction contract to pay the labor and materialmen. 416 Pa. at 419–20, 206 A.2d at 50, *citing, inter alia, DuBois v. United States Fidelity & Guar. Co.*, 341 Pa. 85, 18 A.2d 802 (1941), and *Sundheim v. Phila. Sch. Dist.*, 311 Pa. 90, 166 A. 365 (1933). The Court went on to criticize that rule and to suggest that the better rule was that "upon payment of claims of labor and materialmen, [the surety] is entitled to assert the benefits of subrogation against the funds withheld by the public agency." 416 Pa. at 423–24, 206 A.2d at 52. In the course of its discussion the Court made it clear that the surety's rights should not be dependent on the contract between the contractor and the government (the

owner) but rather on more generalized notions of equity.
The Court stated:

> Even if we were able to accept appellant's view that the
> contracts here in question did not create an obligation in
> [the contractor] to pay labor and materialmen, the surety
> companies should still prevail. The doctrine of subroga-
> tion is not founded upon contract, and, under these cir-
> cumstances, is equally generated by the contractor's com-
> pliance with the statutory obligations to provide the bonds
> in question.

416 Pa. at 426, 206 A.2d at 53.

In short, one may agree that *Jacobs* made a change in
Pennsylvania law. The change, however, concerned the law
of suretyship, particularly as that law had been stated in
cases such as *DuBois* and *Sundheim*. So far as the law of
contracts was concerned, *Jacobs* made no change. Indeed,
the Court did not even cite its prior decisions in *Demharter*
and *Getty*, or this court's prior decision in *Klinges*. Nor did
the Court have any occasion to cite *Demharter*, *Getty*, or
*Klinges*, for its decision was consistent with the principles
exemplified by those cases. In *Jacobs* the contractor was
required by its contract with the government to give a bond.
This bond, which was expressly made part of the contract,
included a provision that "[a]ny person . . . furnishing
labor or material . . . shall have the right of action to
recover the cost thereof from the Contractor and the surety
. . . ." 416 Pa. at 420–21, 206 A.2d at 51. Thus the
contract included an express promise for the benefit of the
labor and materialmen.[6] If the contract between Macy–
Springpenn and Bornstein included such an express promise,
then indeed, as the Court in *Getty* observed, "it might [be]

6. In *Jacobs* the court noted that in this respect the contract was
identical with the contract involved in *Lancaster County National
Bank's Appeal, supra*, 416 Pa. at 422, 206 A.2d at 52. Williston
states that where a provision that the contractor will pay all the bills
for labor and materials appears in a public construction contract, it is
likely to be intended to benefit the creditors of the contractor and not
the government, which need not fear that liens will be filed against
its property. [*See e. g.*, 49 P.S. § 1303(b) (Purdon's 1965)]. 2
Williston, A Treatise on the Law of Contracts § 372 (1959).

forcibly argued that such a provision constituted an equitable assignment of the fund [the withheld balance] for their [the unpaid subcontractors'] benefit." 194 Pa. at 575, 45 A. at 335. The difficulty, however, so far as the unpaid subcontractors are concerned, is that the contract between Macy–Springpenn and Bornstein does not include such an express promise for their benefit; as already discussed, the relationship of the subcontractors to the contract is at best that of incidental beneficiaries.

We therefore conclude that *Jacobs* does not support appellee's contention that Macy–Springpenn was under an "equitable obligation" on the basis of which the unpaid subcontractors are entitled to proceed against the withheld balance. This conclusion is dispositive of the other cases cited to us by appellee.

*Lancaster County Nat'l Bank's Appeal, supra,* is to the same effect as *Jacobs;* as in *Jacobs,* so in *Lancaster,* the contract included an express promise for the benefit of labor and materialmen. 304 Pa. at 440, 155 A. at 860. Similarly, in *Kreimer v. Second Federal Savings and Loan Association of Pittsburgh,* 196 Pa.Super. 644, 176 A.2d 132 (1961), one of the terms of the contract, which was between a property owner, a contractor, and a savings and loan association for the construction of a home, was that "funds or security in its possession in the total amount of [$10,900] . . . shall be held by the Association and applied to the contract price above set forth, which sum shall be paid by the Association directly to those furnishing labor and for materials, as the case may be . . ." 196 Pa.Super. at 646, 176 A.2d at 133. An unpaid supplier brought suit to recover part of the final balance, arguing that it was a third party beneficiary of the contract. This court held that under the contract the savings and loan association had a duty to pay those furnishing labor and materials directly, and that since the supplier was among that group, it was a third party beneficiary. The fact, cited by appellee, that the contract also required that the parties execute a no–lien agreement, while mentioned in our statement of the facts, had no effect on the

outcome of the case, which is consistent with our decision in *Klinges*, and the Supreme Court's decisions in *Demharter* and *Getty*.

Appellee's remaining cases are federal cases.[7] If, as appellee may be understood as suggesting, these cases were to be read as contrary to *Demharter*, *Getty*, and *Klinges*, they would of course be of no precedential authority in deciding the present case, for a federal court must apply–it cannot change–state law. However, we do not so read them; in each the contract in question included an express provision for the benefit of labor and materialmen. Moreover, *Atlantic Refining* involved claims by a surety, and in that respect is similar to *Jacobs*; and in *Adelphia Automobile* the district court, relying heavily on *Jacobs* and *Atlantic Refining*, referred to an "express obligation" that labor and materialmen would be paid (Slip op. at 15).

–d–

Some recapitulation may be helpful, for we acknowledge that language in some of the cases, if taken out of context, may have created some confusion.

The procedural facts of the present case are complex, involving as they do an interpleader and claims by judgment creditors, an assignee, and unpaid subcontractors. These procedural facts, however, should not be permitted to obscure the essential issue, which is whether the unpaid subcontractors have a right to proceed against Macy–Springpenn as owner, as distinguished from their right to proceed against Bornstein as their general contractor.

 Under established principles, subcontractors may proceed against an owner in either of two situations: if there is a direct or express, or "actionable," promise by the owner to pay the subcontractors, *Demharter v. First Federal Savings & Loan Assn. of Pittsburgh, supra*; or if the contract between the owner and the general contractor contains a promise "for the benefit of all the subcontractors who [have] not been paid," *Getty v. Pennsylvania Institute*

7. *See* footnote 3, *supra*.

*for Instruction of the Blind, supra,* 194 Pa. at 574, 45 A. at 334; *C. A. Klinges Inc. v. Camblos Construction Corporation, supra.* Here, neither of these situations prevails.

Appellee contends that even so, unpaid subcontractors may proceed against an owner on an "equitable" basis. This contention is unacceptable. The cases on which appellee relies, in particular *Jacobs v. Northeastern Corporation, supra,* and *Lancaster County Nat'l Bank's Appeal, supra,* concerned the right of a surety, which had paid the subcontractors, as against the owner, not the right of unpaid subcontractors as against the owner. As regards the right of unpaid subcontractors, in both *Jacobs* and *Lancaster* the contract between the owner and general contractor contained a provision for the benefit of unpaid subcontractors. Nothing in *Jacobs* or *Lancaster* persuades us that in filing those opinions, the Supreme Court intended to create a third situation in which subcontractors may proceed against an owner inconsistent with the two established situations recognized by the Court in its decisions in *Demharter* and *Getty,* and by this court in *Klinges.*

Nor do we see any reason of policy, as distinguished from settled precedent, for accepting appellee's contention. To the contrary, we believe sound policy requires that an owner should be permitted to "insert as many provisions, not for the benefit of the subcontractors, but for its own protection, as it chooses." *Getty v. Pennsylvania Institute for Instruction of the Blind, supra,* 194 Pa. at 575, 45 A. at 334. If we were to accept appellee's contention the effect would be to rewrite the owner's contract with the general contractor, thereby disabling the owner from protecting itself against "harassing litigation by wronged subcontractors and materialmen." *Id.* We see no reason to put subcontractors in a position more advantageous than an owner's position. As the law stands now, subcontractors may adequately protect themselves: if they are unwilling to look only to the general contractor for their payment, they may decline to take the job unless the general contractor posts a surety bond, *Jacobs,* or unless the contract between the owner and the

general contractor includes either an actionable promise on which they can rely, *Demharter*, or a promise for their benefit, *Getty*.

It should be noted that nothing said in this opinion is pertinent to deciding whether an unpaid subcontractor may have the right to recover against the owner on a claim that the owner has been unjustly enriched as a result of the subcontractor's work. Here, there was not, and could not be, any claim by the subcontractors that the owner had been unjustly enriched; the owner has paid all that is due into court, and the dispute is only about who is entitled to the money. A claim of unjust enrichment involves issues different then these involved here. Some of these issues have recently been considered in *Gee, et al. v. Eberle, et al.,* 279 Pa.Super. ——, 420 A.2d 1050 (1980).

The order of the lower court is reversed and the case remanded for proceedings consistent with this opinion.