## Penn Equipment & Tool Corp. v. Chatham 90 Inc.

*Stanley W. Greenfield,* for plaintiff.

*Paul V. Castellitto,* for defendant International Fidelity Insurance Company.

WETTICK, *A.J.*, November 18, 1986—Chatham 90 Inc., contracted with the Urban Redevelopment Authority of Pittsburgh to perform construction work. Penn Equipment and Tool Corporation subcontracted with Chatham 90 to provide equipment for this construction project. International Fidelity Insurance Company issued a bond guaranteeing each subcontractor payment for labor, materials, and supplies furnished in connection with the construction project pursuant to the Public Works Contractors' Bond Law, act of December 20, 1967, P.L. 869, 8 P.S. §191 et seq.

Penn Equipment instituted an action against Chatham 90 and International Fidelity to recover $14,175.99 that Chatham 90 allegedly owed for equipment provided by Penn Equipment. Penn Equipment obtained a default judgment against Chatham 90 for the full amount claimed after Chatham 90 failed to file a responsive pleading to Penn Equipment's complaint. International Fidelity filed an answer to Penn Equipment's complaint which, inter alia, alleged that the total amount which Chatham 90 owed Penn Equipment did not exceed $8,916.49. Penn Equipment's action against International Fidelity Insurance Company is still pending.

The Urban Redevelopment Corporation owes a final payment for the construction project that exceeds the amount of Penn Equipment's default judgment. Penn Equipment instituted garnishment proceedings against the Urban Redevelopment Authority to recover the amount of its default judgment against Chatham 90. By order of court dated August 30, 1986, this court vacated a prior order of court directing the Urban Redevelopment Authority to pay over funds to Penn Equipment in response to a petition filed by International Fidelity to set aside

the order of garnishment. Penn Equipment has filed an appeal from this order of court. This opinion is filed pursuant to Pa.R.A.P. 1925.

International Fidelity's argument is very simple. Chatham 90, the contractor, has failed to pay the claims of several subcontractors. These claims exceed the amount of the final payment that the Urban Redevelopment Corporation owes Chatham 90. Under the provisions of the Public Works Contractors' Bond Law (8 P.S. §193), each of these subcontractors may recover from International Fidelity the full amount that is due from Chatham 90. International Fidelity may use any funds that the Urban Redevelopment Authority owes Chatham 90 to meet these obligations. Consequently, while Penn Equipment may obtain a default judgment against Chatham 90, it may not look to Urban Redevelopment Authority funds to satisfy this obligation because International Fidelity has the first claim to these funds to pay only the legitimate claims of Chatham 90.

Penn Equipment argues that its interests are not subordinate to those of International Fidelity because the common law doctrines that have given priority to a surety, such as equitable subrogation and third-party beneficiary law, are not applicable. The weakness of this argument is that International Fidelity's claim is statutorily based.

The Public Works Contractors' Bond Law requires the contractor of a public works project to obtain a bond that protects the subcontractors because of the possibility that the contractor will become insolvent. Insolvent contractors are unlikely to have the desire or the resources to defend lawsuits by subcontractors. Consequently, funds which the owner owes to the contractor will be utilized to pay excessive and frivolous claims unless the funds are

made available to the surety instead of judgment creditors of the contractor. If these funds are not made available to the surety, the surety will spend more of its own money to satisfy the claims of subcontractors. This will result in higher premiums which, in turn, will result in increased construction costs for public works projects. Such a result would be contrary to the legislative intent of protecting the legitimate claims of subcontractors while keeping construction costs as low as possible. Thus, we. will construe the Public Works Contractors' Bond Law to give the surety priority over general creditors or judgment creditors to money retained by the public agency that contracted for the work.

While there are no Pennsylvania appellate court cases directly on point, this court's construction of the Public Works Contractors' Bond Law is supported by *Jacobs v. Northeastern Corp.*, 416 Pa. 417, 206 A.2d 49 (1965), and *Himes v. Cameron County Construction Corp.*, 289 Pa. Super. 143, 432 A.2d 1092 (1981), affirmed in an opinion of the Pennsylvania Supreme Court at 444 A.2d 98 (1982). In the *Jacobs* case, the public agency held funds that it owed for the construction of a state building. Claims to these funds were made by the receiver of the general contractor which was entitled to these funds under its contract with the public agency and the surety companies that had paid the labor and material claims of the subcontractors. It was the position of the receiver that the surety companies were general creditors who should receive only a pro rata share of the funds along with the other general creditors. The surety companies contended that they had a superior right to these funds. The Pennsylvania Supreme Court ruled in favor of the surety companies, holding that it would follow the federal case law construing the Miller Act

(similar federal legislation) which had created an equitable right in the surety to indemnification from the funds to reimburse it for the claims which it had paid.

" . . . The doctrine of subrogation is not founded upon contract, and, under these circumstances, is equally generated by the contractor's compliance with the statutory obligations to provide the bonds in question.

"Labor and materialmen involved in public construction are a group specially protected by statute as well as by these particular contracts. Payment to them is secured by the bond of the contractor's surety. The funds available for the protection and payment of these claims are separate and apart from the relationship between the contractor and his general creditors. This is so irrespective of whether there exists a surety bond for payment. The execution of the surety bond for this special but well known purpose in no way involved or prejudiced the general creditors or the receiver.

"The sum retained by the commonwealth was an added mechanism for achieving performance, as well as providing a further resource for paying labor and materialmen, especially since that sum is less than the total amount due those claimants. Had the surety not paid the labor and materialmen, the funds held by the commonwealth agencies would not have been available to the general creditors. Since the sureties stand in the places of those whose claims they have paid, as persuasively pointed out in *Pearlman,* the funds must be paid to the sureties, just as the funds would have gone, in the absence of a bond, to the labor and materialmen rather than to the general creditors." See *Prairie State Nat. Bank of Chicago v. United States,* 164 U.S. 227, 229, 17

S. Ct. 142, 147, 41 L.Ed. 412 (1896), quoted in *Pearlman*. 206 A.2d at 53-54.

In *Himes*, supra, a bank which held a security interest in proceeds owed the general contractor of a public works project and persons which had provided labor and material to the general contractor for the project (suppliers) were each claiming a priority right to funds held by the public agency after completion of the project. (While the suppliers had been covered by a bond which the general contractor had obtained pursuant to the requirements of the Public Works Contractors' Bond Law, the surety was insolvent.) The court ruled that the suppliers had the first priority to the funds. The opinion cited *Jacobs* for the principle that construction contracts for public works projects "impliedly provided for the retention of final payments by state agencies to cover any failures of payment by the contractor to suppliers of labor and materials" (432 A.2d at 1096), so the contractor "was never entitled to the funds retained by the public body because the obligation to pay suppliers had not been satisfied." 432 A.2d at 1096-7.

Also see, *Ram Construction Co. Inc. v. American States Insurance Co.*, 749 F.2d 1049, 1054 (Third Cir., 1984); *Visor Builders Inc. v. Devon E. Tranter Inc.*, 470 F. Supp. 911 (919-924) (M. D. Pa., 1978).

On the basis of the appellate court decisions in *Jacobs*, supra, and *Himes*, supra, this court concluded that Chatham 90 was not entitled to the funds retained by the Urban Redevelopment Authority because of the implied provision in the construction contract between Chatham 90 and the Urban Redevelopment Authority for the retention of the final payment to cover any failure of payment by Chatham 90 to suppliers of labor and materials. Thus, because of the outstanding claims of the suppliers,

the Urban Redevelopment Authority was not a garnishee as defined by Pa.R.C.P. 3101(b) and, consequently, could not be subject to the entry of a judgment that would deprive the surety of its priority right to these funds.

For these reasons, this court entered its August 30, 1986, order.